Krueger and another vs. Wisconsin Telephone Co.

KRUEGER and another, Appellants, vs. WISCONSIN TELE-PHONE COMPANY, Respondent.

*February 7 — February 27, 1900.*

*Highways: Rights of abutting owners: Telephone companies: Right to construct lines: Statute construed: Additional servitude: Continuing trespass: Abatement of nuisance.*

1. Subject only to the public easement, the owner of land abutting on a street owns the fee to the center of the street, and neither the legislature nor municipal authorities can authorize the taking or incumbering of the street for purposes inconsistent with its public use without the consent of the owner, unless some provision for compensation has been made.

| Krueger and another vs. Wisconsin Telephone Co. | 106 | 96 |
|---|---|---|
| | s115 | 150 |
| | s115 | 153 |
| | s115 | 154 |
| | 60 | LRA 428 |

2. Sec. 1778, Stats. 1898, giving to telegraph companies (including telephone companies) the right to construct and maintain their lines upon and along highways, grants no power to use the highway except as against the public, and was not intended to cut off or limit the rights of the actual owners of the land affected thereby.

3. The compensation paid to the owners of land over which highways have been laid out since the enactment of the above-mentioned statute in 1848 (Terr. Laws of 1848, p. 257) did not cover the use to which such highways might be put by telegraph and telephone companies, their occupancy of portions of the highway being a permanent occupancy of the land, independent of the public use, for the direct benefit of private corporations, and not one which can fairly be said to have been within the contemplation of the parties. *Huston v. Fort Atkinson*, 56 Wis. 350, distinguished.

4. The occupancy of a portion of a highway by the poles and other structures of a telephone line constitutes an additional servitude, as against the owner of the land, which cannot be imposed without his consent, nor without compensation if he requires it.

5. The erection and maintenance of a telephone pole in the street in front of the show window of a store building, interfering with the proper use and enjoyment of the property, is a continuing trespass upon the land, and a nuisance which a court of equity will abate.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed*.

The defendant is a corporation owning and operating a system of telephones and telephone exchanges in this state. In 1882 the city of Neenah, by ordinance, granted the defendant the right to erect and maintain a telephone system in said city. By it the company was granted the right of way through and upon the " streets, sidewalks, alleys and public grounds of the city, for the use of poles and the necessary wires, provided the same were set in such manner as not to interfere with public travel or the flow of water in the gutters, the point of location to be determined under the direction of the street commissioner or city engineer." The system was erected and continued in operation until April, 1895. As originally located, there was a pole about twelve feet north of the corner of Cedar and Wisconsin

streets. An increase of business necessitated a reconstruc-
tion of the system. In the progress of the work it was
deemed desirable to change the location of some of the
poles, and in making such changes this controversy arose.

The complaint sets out that the plaintiffs are the owners
of a tract of land having a frontage of twenty feet on Wis-
consin avenue and seventy-seven feet on Cedar street, ex-
clusive of streets. Upon this tract was located a large store
building, occupied as a drug store, in the corner of which
were large glass windows and doors, looking out upon both
streets. In April, 1895, the defendant, without the consent
and against the protests of the plaintiffs, set a large pole at
the street corner, a few feet from the corner of the drug
store, and immediately in front of the show windows, which,
it is alleged, materially incumbers said property and ob-
structs the view from said store; that it was so set without
authority from the city, and against the protest of the
mayor and street commissioner; that such pole and the
wires thereon are a nuisance, and greatly interfere with
the proper use and enjoyment of plaintiffs' property; that
defendant insists upon the right to occupy and hold posses-
sion of said premises adversely to plaintiffs, and against
their will, and without making any compensation therefor.
The relief demanded is for damages, a removal of the pole,
and a restraining order against its future maintenance.

The answer sets up the incorporation of defendant, its
business, the payment of license fees as required by law, the
building of telephone systems throughout the state, the erec-
tion of the exchange at Neenah in 1882, the erection of the
pole twelve feet north of the intersection of said streets, the
width of the street, acquiescence by plaintiffs in the location
of said pole, the reconstruction of the system in 1895, the
erection of the pole in dispute at the point designated by
the street commissioner, its necessity at that place for the
proper management of its exchange, its existence at that

point since May, 1895, and a denial that the pole or wires interfere with the means of ingress or egress from said premises or obstruct or hinder the uses thereof.

When the case was called for trial the defendant asked the court to require the plaintiffs to elect whether they relied upon a legal or equitable cause of action. The request was denied, and a jury was duly impaneled. A special verdict was returned, substantially as follows: (1) That the pole, as at present located, was not an obstruction to the ordinary use of the street. (2) That the cables and wires attached to the pole interfered with the plaintiffs' use and enjoyment of their property. (3) That the pole was a damage to plaintiff's property. (4) That the pole decreased the rental value of such property. (5) That up to the commencement of this action the plaintiffs' damage was seven dollars. (6) That the street commissioner did not consent to the placing of the pole where it now stands. (7) That the pole could have been placed at some other point without great inconvenience to defendant. (8) That the plaintiffs did not refuse to permit the placing of the pole on the west side of Cedar street, seven feet north of the lot line of Wisconsin avenue. (9) That plaintiffs objected to the placing of the pole where it was put. (10) That the erection of the pole at some other point was practicable. (11) That the erection of the pole at any other point would not have been according to the most approved plan of telephone construction — "not for Telephone Co." (12) That the pole could not have been erected on Cedar street, seven feet north of the south line of plaintiffs' building, and connected with the line running west on Wisconsin avenue, without carrying the wires over plaintiffs' building.

The plaintiffs moved to amend the special verdict by striking out the negative answers to the first, eleventh, and twelfth questions, and substituting an affirmative answer, which was denied. A motion for judgment for plaintiffs

on the verdict as rendered was also denied. The court took the matter under consideration, and, in a written opinion, decided that the action was equitable and the verdict only advisory; that the pole in question was not a nuisance; that the placing of such poles in a street was not an additional burden upon the land which entitled adjoining owners to compensation; and that, although they might occasion some damage to abutting lot owners, it was *damnum absque injuria.* Judgment dismissing the complaint, with costs, was entered, from which plaintiffs have taken this appeal.

*J. C. Kerwin,* for the appellants, to the point that the placing of telephone poles in a street is an additional servitude, cited, besides cases cited in the opinion, Keasbey, Electric Wires (1st ed.), 71, 72, 77, 80–82; 2 Cook, Stock (3d ed.), § 931; 25 Am. & Eng. Ency. of Law, 753; Mills, Eminent Domain, § 35; Cooley, Const. Lim. (6th ed.), 687, 689; *Dusenbury v. Mut. Tel. Co.* 11 Abb. N. C. 440; *Metropolitan T. & T. Co. v. Colwell L. Co.* 18 Jones & S. 488; *Tiffany & Co. v. U. S. I. Co.* 19 Jones & S. 280; *Dailey v. State,* 24 L. R. A. 724; *Lawrence R. Co. v. Williams,* 35 Ohio St. 168; *Prentiss v. Cleveland Tel. Co.* 32 Weekly Law Bull. 13; *H. Clawson & Sons B. Co. v. B. & O. Tel. Co.* 17 Chicago Legal News, 22; *Am. T. & T. Co. v. Jones,* 78 Ill. App. 372; *W. U. Tel. Co. v. Ann Arbor R. Co.* 90 Fed. Rep. 379; *St. Louis v. W. U. Tel. Co.* 148 U. S. 92; *Evans v. C., St. P., M. & O. R. Co.* 86 Wis. 597.

For the respondent there was a brief by *Miller, Noyes, Miller & Wahl,* and oral argument by *Geo. P. Miller.* They contended, *inter alia,* that the Massachusetts doctrine of the uses to which a street can properly be put without the abutter being entitled to additional compensation (*Pierce v. Drew,* 136 Mass. 80; *Lincoln v. Comm.* 164 Mass. 9) has been adopted by this court and by the weight of authority in other states. *Hobart v. Milwaukee City R. Co.* 27 Wis. 194; *Chicago & N. W. R. Co. v. M., R. & K. E. R. Co.* 95 Wis. 568; *Huston v.*

*Ft. Atkinson,* 56 Wis. 350; Booth, Street Railway Law, §§ 82, 83, and authorities cited. To the point that a telephone or telegraph pole is not an additional burden, they cited, besides cases cited in the opinion, *Hewett v. W. U. Tel. Co.* 4 Mackay, 424; *Rugg v. Comm. U. Tel. Co.* 66 Vt. 208; *Gay v. Mut. U. Tel. Co.* 12 Mo. App. 485; *York Tel. Co. v. Keesey,* 5 Pa. Dist. 366; Mills, Eminent Domain (2d ed.), § 187; *Bradley v. Southern N. E. Tel. Co.* 66 Conn. 559; Keasbey, Electric Wires (1st ed.), 82–85.

BARDEEN, J. The importance of this litigation is manifest. It involves the vexed question of whether the placing of telephone poles in a street is an additional servitude, as against the abutting owner, not contemplated by the dedication, that cannot be imposed without his consent, nor without compensation if he requires it. This precise question has not heretofore been decided by this court, so we are free to deal with it as one of first impression, except in so far as the policy of the state has been declared in decisions where kindred questions have been considered and determined. That the question should not have been presented before, in view of its importance and the number and character of the telephone exchanges in the state, is, perhaps, a matter of some surprise. Its importance lies not so much in the individual interests at stake, as in its effect upon the interests of corporations, that have built so many miles of poles, and operated so many exchanges, within the borders of the state. In whatever light it may be viewed, it is not entirely free from difficulty. The question has arisen in many of the states, and adjudications upon both sides are numerous and not without helpful value. The best legal thought of the country has been given to its consideration, and there is little that has been left unsaid. Both sides of the controversy have been presented by eminent counsel, and considered by learned and able judges; and the result has been,

as before stated, a considerable diversity of opinion. Kindred questions have heretofore arisen in this state, and while, perhaps, the decisions have not been in complete harmony with the basic idea of street dedication, it is not believed there has been any radical departure therefrom.

The fundamental idea of street dedication is that the land so dedicated is to be set apart to the entire public for such public use and purpose as the location of the street, urban or suburban, seems to require. The primary use and purpose is public travel. The servitude imposed on the land is the right of the public to construct and maintain thereon a safe and convenient roadway, which shall at all times be open and free for public use as a highway. There is, however, an essential and well-recognized difference between urban and suburban servitudes. The easement of the one is much more comprehensive than the other. Many of the rules which apply to the one class of easements are wholly without force as against the other class. Elliott, Roads & S. 299. This distinction is here referred to in view of the contention made by defendant's counsel hereinafter to be noticed.

We may further premise our discussion with the statement that it is the settled law of this state that the owner of land abutting on a street owns the fee to the center of the street, subject only to the public easement. The doctrine was first announced in *Gardiner v. Tisdale*, 2 Wis. 153, and has been followed in a line of decisions since almost as numerous as the published volumes of reports. This being so, this court held in *Ford v. C. & N. W R. Co.* 14 Wis. 609, that the railroad company could not appropriate and occupy a street with its track without consent of the proprietors of the lots bounded by the street, or compensation made to them, and neither the legislature nor the municipal authorities have any power to dispense with the making of such compensation. See *Blesch v. C. & N. W. R. Co.* 48 Wis. 168;

*Buchner v. C., M. & N. W. R. Co.* 60 Wis. 264; *Hegar v. C. & N. W. R. Co.* 26 Wis. 624. The reason given for this conclusion as stated in the *Ford Case* is that "the two uses are almost, if not wholly, inconsistent with each other, so that taking the highway for a railroad will nearly supersede the former use to which it had been legally appropriated." In *Hobart v. Milwaukee City R. Co.* 27 Wis. 194, the question was raised whether the construction and operation of a horse railway in the streets of a city imposed a new burden upon the adjacent lot-owners, for which they were entitled to compensation. There were conflicting decisions in other states, and the court adopted a middle doctrine, sanctioned by the courts of Ohio, that such a road was not an additional burden entitling the lot-owners to compensation, except when some private right of such owner, such as free access to his own land or buildings, has been materially impaired thereby. Reasons at length are not given in the opinion for this conclusion, but it is evident that it cannot be justified except upon the theory that the street railway tends to further and accelerate the original purpose for which the dedication was made,— that of public travel. In the recent case of *Chicago & N. W. R. Co. v. M., R. & K. E. R. Co.* 95 Wis. 561, this court held that the construction and operation on public streets of an electric railroad extending between several cities or towns, for the transportation of merchandise, baggage, mail and express matter, as well as passengers, is not a mere exercise of the public easement previously acquired by the establishment of such street, but imposes an additional burden thereon, and is the taking of private property, for which the abutting owner is entitled to compensation. Emphasis was laid upon the fact that it was a commercial railway, doing other business than the mere transportation of passengers, and also that the communication was between somewhat distant cities. This case was followed in *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis.

83. But the doctrine was extended so far as to hold that an electric railway running upon the highway through country towns was an additional burden upon the highway. The question whether such a system, operated by the overhead trolley, with its necessary poles, in the streets of a city, was an additional burden, was expressly reserved, and has not yet been determined in this state.

The rights of the abutting lot-owner with reference to the adjacent street has received consideration in several cases. Thus, in *Papworth v. Milwaukee*, 64 Wis. 389, the right of the lot-owner to construct vaults or other areas under a sidewalk, with proper openings therein, was sanctioned, provided it was done in such a manner as not to interfere with or endanger public travel. In *Hay v. Weber*, 79 Wis. 587, a bay window extending over the sidewalk in such a way as not to interfere with travel was permitted. The fair conclusion from this line of decisions is that the abutting owner has all the rights of an absolute owner of the soil, in the streets, subject only to the public easement therein.

It may be admitted that the constitution of the state is the only limit of legislative power over the highways of the state. The lines within which such power is to be restrained are such as were indicated in the *Ford Case*, 14 Wis. 609,— that neither the legislature nor municipal authorities can authorize the taking or incumbering of a public street for purposes inconsistent with its public use, without the consent of the lot-owner, unless some provision for compensation has been made. The extent to which legislative authority may go would be to grant the right of street occupancy, subject to the rights of the owners of the fee. This, it is believed, is all that was intended, and all that the legislature had the right to grant, by the act of the legislature of March 11, 1848. See Terr. Laws of 1848, p. 257. This act gave the right to telegraph companies to construct and main-

tain their lines "from point to point, upon and along any of the public roads . . . within the limits of the territory or state, or upon the land of any individual, the owners of the land through which said telegraph lines may pass having first given their consent," provided the same should be so constructed as not to incommode public use. This law, with some slight amendments, has been carried into the different revisions since that time, and now appears in the revision of 1898 as sec. 1778. While limited in its terms to telegraph companies, this court held in *Wisconsin Tel. Co. v. Oshkosh*, 62 Wis. 32, that the telephone company was included within the meaning of the statute. It should be noted, however, that the supreme court of the United States in a recent case came to a different conclusion regarding an act of Congress of similar import. *Richmond v. Southern Bell T. & T. Co.* 174 U. S. 761. As before noted, it is our conviction that this law grants no power to use the street, except as against the public, and was not intended to cut off or limit the rights of the actual owners of the land affected thereby. Without authority from the state, the placing of poles in a street would constitute a nuisance, abatable as such by the public authorities. By this statute the public is foreclosed of the right to object to the poles being in the street; but the right of the adjacent ower remains intact, to be vindicated, when invaded, by the usual processes of the law.

The fact that the power of eminent domain has not been granted to telegraph or telephone companies cannot affect the question. It may be that the companies have not asked for it. The fact that the question has not been brought here before is of no significance, except as indicating how great has been the forbearance of parties whose rights have been invaded.

The argument that whenever a highway has been laid out since 1848 the compensation paid therefor included the use

telephone companies might put it to is specious, but in reality
overlooks some very important considerations.    In the first
place, there is no kinship between the statutes in relation to
the taking or dedication of highways and the one in ques-
tion.    They do not relate to the same subject matter, nor,
in their purpose, do they concern the same class of people.
In the one case a right is given to the entire public; in the
other, to a few corporations doing a special business for pri-
vate gain.    The one contemplates only such occupancy as
is essential and necessary for the purposes of public travel.
The other grants a right of permanent occupancy to a pri-
vate corporation, conducted for private gain, but doing a
business of public utility and convenience.    A street may
subsist, and the lot-owner have the complete use of his ad-
jacent property.    Not so if a portion of the street has been
permanently taken by poles and other necessary structures
for a telegraph or telephone line.    No one doubts but that
private rights are affected, by the construction and main-
tenance of such a line, in a way entirely different from the
ordinary uses of a highway.    Nor is there room to dispute
the fact that such constructions constitute a permanent oc-
cupancy of the land, independent of the public use.    This
occupancy being for the direct benefit of private corpora-
tions, and only for the indirect benefit of the public, how
can it be said, with any show of justice, that when land is
condemned for a street the public must not only pay for *its*
use, but also for the use of such *quasi*-public corporations
as the legislature has given power to use the highways?

There is also another consideration.    In no case that has
ever come under our observation, where land has been
sought to be condemned, has the fact that the street might
be used by a telegraph or telephone company been urged as
an element of damages.    There are thousands of miles of
streets and highways in the state where no telephone poles
have ever been set, and where none ever will be set, and it

would be absurd to say that the owners of the fee ever con-
templated payment for any other use than that of public
travel.    There is no parallel between this case and *Huston
v. Fort Atkinson*, 56 Wis. 350.    The court there asserts that
materials in one portion of a highway might be taken to re-
pair an adjacent highway, the purpose being in aid of the
public use.  Streets have to be made and worked, hills leveled,
and depressions filled.    Hence it may be said to have fairly
been within the contemplation of the parties that the surface
should be moved from place to place to carry out the original
idea of street-making.

On the general proposition of whether wires and poles
are an additional burden for which the abutting owner is
entitled to compensation, there is, as stated, a wide diver-
gence of opinion among text-writers and courts.    It is uni-
versally admitted that the legislature may subject the high-
way to this use.    The question is whether it can be done
without compensation to the owner of abutting land.    As
stated in Keasbey, Electric Wires, 71, the argument on one
side is that the easement of highway is intercommunication,
or the right to use the highway by the public generally for
the purposes of intercommunication.    Its purpose has been
the transmission of intelligence, as well as for travel and
transportation.    It has been used by the post horse and mail
wagon as well as the coach and the cart.    When new modes
of travel and new means of communication become neces-
sary, the public have a right to use them, and they impose
no new burden on the soil unless they are inconsistent with
the old use; and, if the old use remains unimpaired, the
owner of the soil has no reason to complain.    Some of the
leading cases supporting this view are here noted: *Pierce v.
Drew*, 136 Mass. 75; *Irwin v. Great-Southern T. Co.* 37 La.
Ann. 63; *Cater v. N. W. T. E. Co.* 60 Minn. 539; *Julia B. Asso.
v. Bell T. Co.* 88 Mo. 258; *People v. Eaton*, 100 Mich. 208;
*Hershfield v. Rocky Mountain B. T. Co.* 12 Mont. 102; *Magee
v. Overshiner*, 150 Ind. 127.

On the other hand, it is argued that the streets were intended primarily for travel and transportation, and that, although they were intended also for the transmission of intelligence, and the telephone and telegraph are used for that purpose, yet the mode of use is so wholly different from the old one, and requires such permanent occupation of the soil, that it cannot be supposed that the landowner ever contemplated such use and occupation. He has only given the right of use for a public highway, and, if he cannot complain of this permanent occupation, there is nothing to prevent the posts being put so as to form a barrier between his land and the street, and the wires from being so numerous as to be annoying and dangerous. The primary law of the highway is motion, and whether vehicles are used, or whatever method of transmission of intelligence is adopted, the vehicle must move and the intelligence be transmitted by some moving body which must pass along the highway, either on or over, or perhaps under, it, but cannot permanently appropriate any part of it. The authorities supporting this view are so numerous that it may be said with confidence that the great weight of judicial opinion is in its favor. We note the following cases: *Eels v. Am. T. & T. Co.* 143 N. Y. 133; *Board of Trade T. Co. v. Barnett,* 107 Ill. 507; *Postal T.-C. Co. v. Eaton,* 170 Ill. 513; *Am. T. & T. Co. v. Pearce,* 71 Md. 535; *Western Union T. Co. v. Williams,* 86 Va. 696; *Chesapeake & P. T. Co. v. Mackinzie,* 74 Md. 36; *Blashfield v. E. S. T. & T. Co.* 71 Hun, 532; *Smith v. Central Dist. P. & T. Co.* 2 Ohio C. C. 259; *Stowers v. Postal T. C. Co.* 68 Miss. 559; *Pacific Postal T. C. Co. v. Irvine,* 49 Fed. Rep. 113; *Nicoll v. N. Y. & N. J. T. Co.* 42 Atl. Rep. 583; *Hewett v. W. U. T. Co.* 13 Wash. L. Rep. 466. See *Halsey v. Rapid Transit St. R. Co.* 47 N. J. Eq. 380; *Sterling's Appeal,* 111 Pa. St. 35; *Broome v. N. Y. & N. J. T. Co.* 42 N. J. Eq. 141; *Jaynes v. Omaha St. R. Co.* 53 Neb. 631, 39 L. R. A. 751. In addition to the courts, the text-writers quite uniformly subscribe to this doctrine.

Mr. Lewis, in his work on Eminent Domain (§ 131), says: "The lines of a telegraph or telephone company are on the same footing as the steam railroad. They form no part of the equipment of a public highway, and are entirely foreign to its use." Another writer on this same subject says: "And the sounder rule seems to be that the abutting owner ought to be compensated for all actual injury to his property or the right to use the same." Tiedeman, Mun. Corp. § 297. Randolph on Eminent Domain (§ 407) says that the prevailing opinion is that the plant of a telegraph or telephone company is an additional servitude. See, also, Croswell, Electricity, § 110; Thompson, Electricity, § 18; Elliott, Roads & S. 534, 535; 2 Dillon, Mun. Corp. § 698a.

In view of this overwhelming array of courts and law writers in favor of the latter rule, and in view of the adoption by this court of the middle-ground doctrine mentioned in the *Hobart Case*, 27 Wis. 194, we feel compelled to drop into the ranks of the majority, and sanction this rule as the policy and law of this state. Every question and every argument bearing on the situation has been raised and used, and considered and determined, in the cases cited; and nothing that we can say will add to their weight, or be likely to convince the doubting. The suggestion that the adoption of this rule will cripple or destroy the commerce of the state, is weighty, but the rights of the public, or of corporations engaged in conducting business of a public character, cannot be allowed to prevail over the rights of individuals, except in the way pointed out in the constitution. The fact that some of the cases mentioned were decided with reference to the location of poles on country roads does not lessen their weight. If it be a fact, as we believe it is, that in the dedication or condemnation of streets the taking and occupancy of a specific portion for permanent structures was not within the contemplation of the parties, then the argument of the greater rights of the public in city streets fails. The freedom

Krueger and another vs. Wisconsin Telephone Co.

of use and enjoyment of adjoining property has been interfered with, and a definite portion of both street and highway has been taken, contrary to the original purpose, and without compensation.

On the trial the complaint was objected to as having a double aspect. It was claimed that it contained allegations which would make the action either at law or in equity, to suit the exigencies of the pleader; and the court was asked to compel the plaintiffs to elect as to which aspect of the case they intended to adopt. This request was denied, and the case was submitted to a jury, and a special verdict taken. Afterwards the court became convinced that the suit was one in equity, regarded the findings of the jury as advisory only, and judgment was ordered for defendant, mainly on the theory that the pole in dispute did not constitute an additional burden on the street. Without entering into any formal discussion of the matter, we shall assume, as counsel for both parties and the court have assumed, that the action is one in equity to abate a private nuisance, under ch. 137, Stats. 1898. The proof amply shows that defendant entered upon the plaintiffs' land, and erected an unsightly pole immediately in front of their show window, and which in some degree interferes with the proper enjoyment of their property. Such occupancy constitutes a continuing trespass upon the land, and affords grounds for the intervention of the court.

In view of what has already been said, the decision of the trial court was erroneous. The judgment is therefore reversed, and the cause is remanded with directions to enter judgment for the plaintiffs for the removal of the pole and for the damages found by the jury.

*By the Court.*— So ordered.