WISCONSIN TELEPHONE COMPANY, Respondent, vs. KRUEGER
and another, Appellants.

*April 23—September 23, 1902.*

*Telephone companies: Condemnation proceedings: Prior judgment
for removal of pole.*

After the entry of a judgment ordering the abatement and removal
of a telephone pole as a nuisance, ch. 319, Laws of 1901, was en-
acted, authorizing the taking by condemnation of rights and
easements for telephone purposes. The act provided that it
should not apply to any pending action nor to any claim or
cause of action existing prior to its passage. *Held,* that the
telephone company could not, by condemnation proceedings
under the act, acquire a right to maintain the pole which would
supersede the right to enforce the judgment for its removal.

APPEAL from an order of the circuit court for Winnebago
county: GEORGE W. BURNELL, Circuit Judge. *Reversed.*

It appears from the record, and is undisputed, that in
1896 the defendants in this action, as owners of the lot de-
scribed, on the corner of Wisconsin avenue and Cedar street,
in Neenah, and the building thereon, possessed and occupied
by them as a drug store, commenced an action against this
plaintiff to compel it to remove a large telephone pole which
it had set at that street corner, a few feet from the corner
of such drug store and immediately in front of the show win-
dows, without the consent or authority and against the pro-
test of *Krueger* and *Barnett,* and to have the same abated as
a nuisance, and for damages, and to restrain the telephone
company from maintaining the same. Issue being joined,
the cause was tried as an action at law, and a special verdict
was filed therein July 23, 1898, subject to the opinion of the
court. The court took the matter under advisement, and
September 10, 1898, held that it was an equitable action,
and that the verdict was merely advisory, and adjudged that
the action be dismissed, without costs to either party, except
that each party should pay to the clerk so much of his costs

as were incurred in behalf of such party. From that judgment *Krueger* and *Barnett* appealed to this court, and the same was reversed February 27, 1900, and that cause was remanded, with directions to enter judgment in favor of *Krueger* and *Barnett* for the removal of the pole and for the damages so found by the jury. *Krueger v. Wis. Tel. Co.* 106 Wis. 96, 110, 81 N. W. 1041. The damage so found in such special verdict up to the commencement of that action was $7. 106 Wis. 99, 81 N. W. 1042. After the *remittitur* in that case had been filed in the trial court, and on May 12, 1900, judgment was entered therein according to such mandate, to the effect that *Krueger* and *Barnett* recover from the telephone company the $7 damages so found by the jury, and $309.67, the costs of that action, amounting in all to $316.67; that the pole, timbers, wood, wires, and cables be removed and abated; and that *Krueger* and *Barnett* have execution to collect such damages and costs; and that unless the telephone company, within sixty days from notice of the entry of such judgment, abate and remove such nuisance, a warrant issue to the sheriff to remove and abate the same at the expense of the telephone company. Thereupon the telephone company appealed from that judgment to this court, and when such cause was reached for hearing on the calendar, May 4, 1901, such judgment was affirmed under Rule XVII of this court, for the reason that no "case" nor brief had been served or filed, nor any appearance entered, by the telephone company. The $7 damages and $309.67 costs mentioned were paid by the telephone company.

Ch. 319, Laws of 1901, was published and went into effect May 9, 1901, authorizing condemnation proceedings for "the construction of lines for the use of telegraph, telephone, and power transmission companies." On May 11, 1901, the telephone company filed its petition in the circuit court to acquire by such condemnation proceedings the right to maintain and continue the pole and other equipment on the prem-

ises of *Krueger* and *Barnett* at the place named, under ch. 319, Laws of 1901, and thereupon, and on the same day, an order was entered fixing the time for the hearing of such petition, June 8, 1901, and providing for the giving of the requisite notices. On or about June 1, 1901, the telephone company commenced this action, and obtained an order, based upon the verified complaint and undertaking, restraining *Krueger* and *Barnett* from causing a warrant to issue on the judgment of May 12, 1900, to remove and abate such pole and equipment. On July 8, 1901, the telephone company obtained an order that it was entitled to take and acquire by such condemnation proceedings for the uses and purposes of a telephone right of way and for telephone purposes the land covered by the pole and its appurtenances, and commissioners were thereby accordingly appointed. On August 14, 1901, such commissioners made their report, and awarded $25 as compensation to *Krueger* and *Barnett,* and the amount thereof was thereupon and on the same day paid into court for the benefit of *Krueger* and *Barnett.* Upon such facts the trial court, on August 17, 1901, denied the motion which had previously been made by *Krueger* and *Barnett* to vacate and dissolve the preliminary injunction so entered in this action against them June 1, 1901. From that order the defendants, *Krueger* and *Barnett,* bring this appeal.

*J. C. Kerwin,* attorney, and *Chas. Barber,* of counsel, for the appellants.

For the respondent the cause was submitted on the brief of *Miller, Noyes & Miller.*

The following opinion was filed May 13, 1902:

Cassoday, C. J. The only ground upon which it is attempted to justify the granting and continuing of such injunction is that the right to have the pole and its equipment removed and abated as a nuisance, which had been so adjudged in favor of *Krueger* and *Barnett* May 12, 1900, had

been superseded by the plaintiff's purchase of the right to maintain the pole through the condemnation proceedings under ch. 319, Laws of 1901. In other words, and in the language of counsel, such right of the plaintiff "acquired through condemnation proceedings was superior to the judgment." That judgment was in strict accordance with the mandate of this court. *Krueger v. Wis. Tel. Co.* 106 Wis. 96, 110, 81 N. W. 1041. It was, moreover, expressly affirmed by this court. Could that statute, enacted a year after the rendition of that judgment, supersede or nullify that adjudication, or authorize proceedings which would have that effect, or be superior to the judgment? The furthest any court has gone in that direction, as we now call to mind, was in the celebrated *Wheeling Bridge Case*. In that case the bridge had been constructed over the Ohio river under a statute of Virginia. A decree had been entered in the federal court to abate the bridge as an interference with interstate commerce and a public nuisance. Thereupon Congress passed an act declaring the bridge to be a lawful structure, and that the same be an "established post road for the passage of the mails of the United States." In passing upon the validity of the act of Congress, Mr. Justice NELSON, speaking for the majority of the court, said:

"But it is urged that the act of Congress cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby in favor of the plaintiff. This, as a general proposition, is certainly not to be denied, especially as it respects adjudication upon the *private rights of parties*. When they have passed into judgment, the right becomes absolute, and it is the duty of the court to enforce it. The case before us, however, is distinguishable from this class of cases so far as it respects that portion of the decree directing the abatement of the bridge. Its interference with the free navigation of the river constituted an obstruction of a public right secured by acts of Congress." *Pennsylvania v. Wheeling & B. Bridge Co.* 18 How. 421, 431.

That was said on the theory that Congress had the exclusive right to regulate interstate commerce and to establish post roads and provide for the transportation of the mails thereon. In that case the legislation was sustained only in so far as it affected the rights of the public. A similar distinction was observed in a recent case in this court. *Linden Land Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 512, 83 N. W. 851. In considering the validity of a section of the statute authorizing municipal corporations to grant to street railway corporations the right to construct, maintain, and operate such railways in the public streets without securing compensation to abutting landowners, it was there said by Mr. Justice Winslow, speaking for the court, that:

"We think it may reasonably be said that this law was only intended to authorize corporations to use streets with the consent of the city for carriage of freight *as against the rights of the public,* and not as against *private owners,* leaving such private owners in full possession of their rights to stop the construction, insist on compensation, or give their consent, as they chose. Such was substantially the construction placed upon the act authorizing telegraph companies to place their poles in streets, in the case of *Krueger v. Wis. Tel. Co.* 106 Wis. 96, 81 N. W. 1041. This construction seems to us to be entirely reasonable."

Here the rights secured to *Krueger* and *Barnett* by a solemn adjudication, and which is said to be superseded and nullified by proceedings under the subsequent enactment, was purely private. There is plenty of authority to the effect that the judgment of May 12, 1900, vested in *Krueger* and *Barnett* rights of property which could not, directly or indirectly, be divested or nullified by subsequent legislation. *De Chastellux v. Fairchild,* 15 Pa. St. 18; *S. C.* 53 Am. Dec. 570, and note; *Boston Franklinite Co. v. Condit,* 19 N. J. Eq. 394; *People ex rel. Reynolds v. Common Council,* 140 N. Y. 300, 307, 35 N. E. 485; *McGahey v. Virginia,* 135 U. S. 662, 10 Sup. Ct. 972. But we do not think that ch.

319, Laws of 1901, applied to that judgment. Sec. 9 of the act expressly provides that: "This act shall not apply to any proceeding or action now pending, nor to any claim or cause of action existing prior to the passage of this act," etc. This being so, it is unnecessary to continue the discussion.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded with direction to grant the motion of the defendants to vacate and dissolve the preliminary injunction, and for further proceedings according to law.

A motion for a rehearing was denied September 23, 1902.