HODGES, et al., Respondents, v. SNYDER, et al., Appellants.

(186 N. W. 867.)

(File No. 4849.   Opinion filed January 31, 1922.)

1.   School Districts—Statutes—Curative Act Re Illegal Consolidated School Districts—Prior Injunction Against District Proceedings, Subsequent Order Refusing to Vacate Injunction, Effect of Curative Act as Changing Legal Status of Territory.

Where, a few days after a judgment was entered adjudging a certain consolidated school district to be invalid and enjoining the officers thereof from taking further proceedings, a general curative act concerning consolidated school district organizations theretofore had was enacted, whereupon the court by order refused to vacate the injunctional features of said judgment, held, that said enactment was a proper exercise of purely legislative functions; it in no manner reversed or interfered with the said judgment; but its sole effect was to change the legal status of every territory constituted like the territory involved in this suit and which, like said territory, had attempted but failed to organize into a consolidated district; that the rule that legislative action cannot be made to retroact upon past controversies and to reverse judicial decisions, is inapplicable, that the status of the particular territory here involved was, after said judgment rendered, identical with its status

before, and was precisely the same as the status of every territory having within its borders an independent district which had attempted to organize as a consolidated district under the pre-existing law; that had said officers in the particular case acted contrary to said injunction, such action would not have been more illegal than would have been like action of officers of any like territory as to which there had been no adjudication.

2. **Statutes—Legislature as Non-subject to Restriction by Judiciary —Contention That Curative Act Non-applicable to Territory Subjected to Previous Injunction, Untenable—Adjudication as Declaring, Not Creating, Legal Territorial Status, Legislation Recognizing Court's Interpretation.**

The Legislature being the lawmaking body, is, while acting within its proper sphere, no more subject to restriction by judiciary than is latter by Legislature; that the Legislature has plenanry power to create and define powers of school corporations, and constitutional power to pass the curative act in question involving previous illegal consolidation proceedings, the effect of which enactment was to legalize organizations and acts of all other territories, which, like the one here involved and concerning which Court had enjoined further proceedings, had attempted to organize a consolidated district out of districts including an independent district; which legislation applied as well to this particular territory; and the fact that a court had a few days before this enactment declared, but not created the then legal status of this particular territory, is immaterial; the Legislature having by said enactment merely recognized the interpretation which the Court had placed upon the pre-existing law, and the Legislature by the new act removed all doubt as to its intention and sought to cure the result flowing from the former wording of the statute.

3. **Curative Act—Court's Right to Vacate Injunctional Order Re Illegal School District Because of Curative Act, Effect, Had it Done Otherwise.**

A curative act, effective a few days after court decree adjudging the consolidated school district in question illegal, and enjoining further proceedings thereunder, would, had it taken effect a few days earlier, have controlled the decision of trial court even after remittitur from Supreme Court on a decision holding invalid such organization had gone done; and if trial court had then, in accordance with appellate judgment, entered judgment invalidating the school district and enjoining further proceedings, this Court on appeal therefrom would have reversed trial court. Therefore, trial court properly set aside its former order after curative act was in force.

4. **Curative Act—Legislation After Suit Brought or After Appeal from Judgment, As Controlling Final Determination, Reasons for Conclusions—Legislative Validity as Removing Defect Forming Basis of Judgment.**

The ground on which Court holds that curative legislation enacted after suit brought or after judgment and pending appeal, controls final determination of the suit, is because such legislation is not an attempted exercise of judicial power nor an attempt to control or reverse Court's action, but is proper exercise of legislative functions, and its effect is simply to remove that which otherwise must control Court's action; and it is no objection to a curative act that it invalidates what was previously judicially declared invalid; since such judgment may furnish occasion for the legislation; which latter cannot annul or set aside Court's judgment, but may remove a defect from which the judgment proceeded. Such judgment did not forbid future curative legislation to change existing status of a school district; such restriction on the law-making power would have been an unjustifiable interference with it by the judiciary; and the effect of the Court's judgment prior to curative legislation, was simply to determine that this territory did not constitute a consolidated district, and during the period of such status to enjoin its functioning as such. The curative act in question was prompted by the pendency of the said injunction suit, and was intended to remedy the very thing in the then existing law upon which plaintiffs were depending—a remedy within province of legislative action.

5. **Same—Right of Taxpayers to Enjoin Proceedings by Invalid District, Not Vested Right Re Future Curative Legislation—Vested Right Limited to Costs.**

The right of plaintiffs as taxpayers in the alleged illegal consolidated school district to injunctive relief against action of its illegal officers rested, as to the future, upon conditions of the existing law, and such right was not vested right, and no decree of court based upon preceding law could make it such, it being subject to termination whenever the law changed; therefore such change in law by curative act did not deprive any one of vested right to injunction; the only vested right created by the injunctive decree based on prior law was right to recover costs by successful party. No vested right exists in and to an injunctional order or decree.

Appeal from Circuit Court, Kingsbury County. Hon. ALVA E. TAYLOR, Judge.

For opinion on former appeal, see 43 S. D. 166, 178 N. W. 575.

Action by H. H. Hodges and others, on behalf of themselves and all other electors and taxpayers similarly situated, against G. T. Snyder and others as members of the Board of Education of the Consolidated School District of Erwin Independent Consolidated School District No. 1 of Kingsbury County, South Dakota, and others as Clerk and Treasurer thereof, and M. L. McCarty, County Superintendent of Schools of said Kingsbury County, to enjoin defendants from purchasing school site, etc., and from issuing and selling school bonds, etc., and for other relief. From an order refusing to vacate the injunctive features of a decree of the Circuit Court, defendants appeal. Reversed with directions.

*Null & Royhl,* for Appellants.

*Hall & Purdy,* for Respondents.

(1) To point one of the opinion, Appellants cited: State v. Squires, 26 Iowa 340; Cowgill v. Long, 15 Ill. 203.

Respondents cited: Cooley on Const. Lim. (5th Ed.) p. 113, 114; 6 R. C. L., p. 162; People v. Supervisors of Saginaw Co., 26 Mich. 21; 12 C. J. 1091.

(3) To point three, Respondents cited: 4 C. J. 1222-3; Fulton v. Krull, 151 App. Div. 142, 135 N. Y. S. 432 Key No.; Crown v. Forest Land Co. (Wis.) 76 N. W. 613.

(4) To point four, Appellants cited: Erskine v. Steele County, 39 C. C. A. 173 (98 L. 215); Brand v. Multnomah, 50 L. R. A. 389.

(5) To point five, Appellants cited: Bradder v. Brownfield, 2 Watts & Serg. (Pa.) 271.

WHITING, J. This cause has been before us upon a former appeal, our decision being reported in 43 S. D. 166, 178 N. W. 575. It was then held that the attempted organization of the purported school corporation, of which defendants claim to be officers, was invalid, because there was then no statute authorizing the incorporating of an independent district into a consolidated school district. Such decision was filed and announced June 24, 1920, and remitttitur filed below July 15, 1920. On June 26, 1920, the Legislature enacted chapter 47, Laws Special Session 1920. This law, under section 22, art. 3, of the Constitution, and section 5111, R. C. 1919, went into effect on the ninety-first day after its enactment, or September 25, 1920. On September 18, 1920, the trial

court entered its judgment, based upon the judgment of this court, and held the attempted incorporation of defendant district invalid, and permanently enjoined the defendants—

"from proceeding further as a consolidated school district, and from in any manner assuming or undertaking to assume that said purported Erwin independent consolidated school district * * * is in fact or law a consolidated school district, * * * and from purchasing any site or erecting any school building for said purported consolidated school district, and from issuing bonds * * * purporting to be the obligations of said alleged Erwin independent consolidated school district, * * * and from advertising for bids therefor, and from selling the same, and from conducting or attempting to conduct said alleged consolidated school district, and from acting or purporting to act as officers thereof."

After the said chapter 47, supra, went into effect, the defendants, basing their motion on the proposition that such statute cured the defective organization of the alleged consolidated district, moved the circuit court to vacate the provisions of the decree above set out. The trial court entered an order denying the motion, and from such order this appeal was taken.

But two questions are presented: (a) Did the curative act apply to this particular school district, the final judgment of the trial court, adjudging the organization thereof invalid, having been rendered before such curative act went into effect? (b) If the answer to the above question be in the affirmative, should appellants have sought the vacation of the injunction, or should they have proceeded in disregard of the injunctional decree after the curative act went into effect?

In contending for a negative answer to the first question, respondents base their whole case upon the fact that, prior to the going into effect of the curative act, there had been a final adjudication holding that the attempted organization of this alleged consolidated district was invalid. They quote from Cooley's Const. Lim (5th Ed.) 113:

"The legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts in the exercise of their undoubted authority have made, for this would not only be the exercise of a judicial power, but it would be its exercise in the most objectionable and offensive form. * * *"

And from 6 R. C. L. 162:

"Since the Legislature does not possess and cannot assume the exercise of judicial powers, it cannot interfere in any way with pending judicial controversies. Therefore the Legislature cannot annul or set aside the final judgment of a court of competent jurisdiction."

[1] No one would question the soundness of the propositions cited, but they have no application to the facts of this case. No claim is made by respondents but that this curative act was a valid legislative enactment, and as such applicable to, and effective for the purpose of, curing any defect in the organization of other territory which included an independent district and had attempted to organize into a consolidated school district, provided there had not been, as to such territory, as there had been as to this one, a judicial determination of the invalidity of such attempted organization. The enactment of this curative act was a proper exercise of a purely legislative function; such act in no manner whatsoever reversed or interfered with the judgment of any court; what it did do was to change the legal status of every territory constituted like the territory involved in this action, and which, like this territory, had attempted, but had failed, to organize into a consolidated district. We must bear in mind at all times that the judgment of a court, in an action wherein the court is called upon to determine the legal status of a person or thing, does not change such status, but merely declares what it has been and is. The status of the particular territory involved in this action was, after the final judgment rendered in this action, identical with its status before; it was also, after such judgment, exactly the same as the status of every territory having within its border an independent district, which had attempted to organize as a consolidated district under the law existing prior to the curative act, the only difference being that, as to the one attempted consolidation before the court, there was entered a decree, addressed to those purporting to be officers thereof and forbidding their acting as such officers, though acts of theirs would not, because of such decree, have been a whit more illegal than would have been like actions of the officers of any like territory as to which there had been no adjudication.

Respondents cite authorities in support of the legal proposi-

tions above quoted.   These authorities, with one or two exceptions, fully support such propositions.   In these cases, the legislative branches of government had attempted to control or overturn the actions of courts in matters peculiarly within judicial, as distinguished from legislative, control.   In Dorsey v. Dorsey, 37 Md. 64, 11 Am. Rep. 528, there was involved an act authorizing courts to reopen cases theretofore decided; this act was held unconstitutional as an attempt to exercise judicial power.   In Denney v. Mattoon, 2 Allen (Mass.) 361, 79 Am. Dec. 784, it was held that the Legislature was without power to validate insolvency proceedings that had been prosecuted before a person having no title to the office of judge of insolvency.   In Macartney v. Shipherd, 60 Or. 133, 117 Pac. 814, Ann. Cas. 1913D, 1257, an act attempting to validate all appeals taken within a certain period after judgment or order was held invalid as to appeals taken before the law was enacted.   In Ratcliffe v. Anderson, 31 Grat. (Va.) 105, 31 Am. Rep. 716, an act authorizing the opening of judgments theretofore rendered was held invalid.   In People v. Supervisors, 26 Mich. 22, a decision by Justice Cooley, it was held that the act in question was not a curative act at all, but an attempt indirectly to override judgments theretofore rendered. In State v. Flint, 61 Minn. 539, 63 N. W. 1113, it was held that a Legislature cannot, by an act subsequent to judgment, grant a new trial or trial de novo.   Ean v. Chi. Ry. Co., 101 Wis. 166, 76 N. W. 329, and Kearney Co. v. Taylor, 54 Neb. 542, 74 N. W. 965, are absolutely foreign to the propositions under which cited, or to any question in the present case.   In De Chastellux v. Fairchild, 15 Pa. 18, 53 Am. Dec. 570, it was held that the Legislature has no power to order a new trial, or to direct the court to order it, either before or after judgment; such power being judicial.   In Connell v. Vaughn, 40 Ga. 154, it was held that an act authorizing actions to reduce money judgments theretofore obtained was unconstitutional.   In Bd. of Com. v. Workman (Ind.) 103 N. E. 99, a judgment had been entered under which vested rights were acquired; it was held that by later legislation these vested rights "could not be impaired."   In Thomas v. City of Portland, 40 Or. 50, 66 Pac. 439, the court announced propositions analogous to those quoted by respondents from Cooley and C. J., supra, but held them inapplicable to facts of that case.   It

seems too clear for dispute that these decisions have not the slightest bearing upon the question before us.

[2] The Legislature is the law-making body, and, while acting within its proper sphere, is no more subject to restriction by the judiciary than the judiciary is by the Legislature. That the Legislature has plenary power to create and define the powers of school corporations will hardly be challenged. That the Legislature had the constitutional power to pass the curative act in question and that the effect of such act was to legalize the organization and acts of all other territories which, like the one involved in this litigation, had attempted to organize a consolidated district out of school districts which included an independent district, is not and certainly could not be disputed. What reason can be urged, then, why the action of the Legislature should not apply to this particular territory? No reason is given why it should not, as a matter of legal right. The reason announced is based on the fact that a court had happened, a few days before this act became effective, to declare, *but not to create,* the then legal status of this particular territory. The Legislature merely recognized the interpretation which this court, in this very action, had just placed on the law then in force; and the Legislature, by the new act, removed all doubts as to its intention, and sought to cure the results flowing from the former wording of the statute.

[3] What we therefore have before us is, not the question of whether the curative act is invalid, because it annuls or sets aside the judgment of a court, but the question of the right of a court itself to set aside and vacate an injunctional order contained in its own decree, because of the enactment of a law that is concededly within the legitimate legislative sphere, and which attempts to remove that which compelled the court to render the injunctional order. No one could or would for a moment claim that this act would not have applied to and have affected the status of this particular territory, if it had gone into effect but a few days earlier— any time before such status had been judicially declared by the final judgment of the circuit court. If this curative act had gone into effect but a week earlier, it would have controlled the decision of the circuit court, even after our remittitur had gone down, and, if such court had then, in accordance

with the judgment of this court, entered the judgment it did enter, this court upon appeal from such judgment would have reversed the trial court. Cooley, Const. Lim. (7th Ed.) 544; Pennsylvania v. Wheeling Bridge Co., 18 How. 421, 15 L. ed. 435; Brand v. Multnomah Co., 38 Or. 79, 60 Pac. 390, 62 Pac. 209, 50 L. R. A. 389, 84 Am. St. Rep. 772; In re Clinton Bridge, Fed. Cas. No. 2900; Id., 10 Wall. 454, 19 L. ed. 969; Sawyer v. Davis, 136 Mass. 239, 49 Am. Rep. 27; Williams v. Shoudy, 12 Wash. 362, 41 Pac. 169; Steele County v. Erskine, 98 Fed. 215, 39 C. C. A. 173.

[4] Why is it that the courts hold that curative legislation, enacted after suit brought, or even after judgment and pending appeal, *controls the final determination of the action?* Simply because such legislation *is not an attempted exercise of judicial power, nor an attempt to control or reverse the action of the court,* but is a proper exercise of legislative functions, and its effect is simply to remove that which otherwise must control the action of the court. As stated in 2 Lewis' Sutherland, Stat. Constr. 1237:

"It is no objection to a curative act that it validates what has previously been declared invalid in a judicial proceeding. The judgment may furnish the occasion for the act. Of course, the Legislature cannot annul or set aside the judgment of a court, but it may remove a defect from which the judgment proceeded."

Suppose that the Legislature, instead of enacting the curative act, had enacted a general law under which, by its mere passage and without any vote of the electors, all territories situated like this independent district and the surrounding territory were declared consolidated school districts. That would have been a clear exercise of legislative power. No one would claim that the existing judgment would prevent the application of such act to the particular territory included in this action; and there is certainly no reason why such judgment should be held higher in power than this curative act, when it would not be higher in power than a general law not curative in nature. What did this court intend by its opinion on the former appeal? Certainly not to make any holding that would forbid the Legislature, either by an ordinary act or a curative act, to change the existing status of any school district. To attempt such a restriction on the law-making part of

our government would have been an unjustifiable interference on the part of the judiciary with the law-making power of a co-ordinate branch of our government. What this court meant to do, and what the trial court by its decree did do, was to determine that this territory did not constitute a consolidated district, and, during the time such status existed, to enjoin its functioning as such.

[5] In the case at bar, plaintiffs had a right to injunctive relief at the time the action was brought, because of the then law; this right, as to the future, rested solely upon the continuance of such law; this was not a vested right, and no decree of the court could make it such; it was subject to be terminated whenever the law changed. The change in the law, therefore, did not deprive any one of a vested right to an injunction, because no one was possessed of such right—neither the parties to this particular suit, nor the electors in this or any other territory containing an independent district, and out of which it had been sought to create a consolidated district. The only vested right created by the judgment before us is the right to recover the costs adjudged in favor of the successful party; and no one is seeking to have such money judgment vacated. Sawyer v. Davis, supra. That a person cannot have a vested right in an injunctional order or decree is made perfectly clear by the opinions in the cases cited above.

A good test of the soundness of a legal proposition is the results that might flow therefrom. Suppose there are four groups of districts, and each has attempted to organize into a consolidated district; in each group is an independent district; actions are brought attacking three of these attempted consolidations, so that, when a curative act is introduced in the Legislature, this situation existed: One district, no contest; one district, action still pending in trial court; two districts, actions pending on appeal. After the act is enacted, but before it goes into effect, the two appeals are decided, and the two causes remitted, one to one circuit court, the other to another; in one circuit, the judge, knowing that such act will go into effect in a few days, and seeking to forestall the effect of the new act, enters judgment holding the attempted organization invalid, and enjoining the territory from functioning as a consolidated district; in the other

circuit, the judge, recognizing the will of the law-making power, and desiring to carry same into effect, declines to enter judgment until after the act goes into effect, and then, as he would be bound to, enters a judgment dismissing the prayer of the complaint; the result would be that in three districts consolidation is upheld, in the other declared ineffective. Is it possible that the curative act, when it does go into effect, cannot apply to the terriotry which the court held not a consolidated district, and this because, forsooth, such act went into effect after such holding of the court and would be the *setting aside of a judgment of such court?* It would truly be a remarkable rule of law that would bring such results, and a remarkable power vested in courts, whereby they might control results by hastening or delaying decisions. Under such a holding, the entering of an opinion in the very action that may have been the one first started, and the one which called attention to the necessity of further legislation, renders such legislation, for all time to come, ineffective as to the territory involved in such action.

A homely illustration demonstrates the fallacy of respondents' contentions. A society has by-laws under which every man of a particular community and possessing certain qualifications becomes ipso facto, because of such qualifications, entitled to membership in such society. 'Among the necessary qualifications is a required physical condition. There are two men suffering from the same physical defect. One seeks admission, and he is subjected to examination by one having power to pass on the physical condition of applicants and to reject or admit them to membership. This applicant, is examined, and an order made wherein it is recited that he is not qualified for membership, and is rejected. Thereafter these two men are cured of their physical defect, and they then both seek admission to the society. Should one be admitted and the other rejected, and this one rejected because it was a wrongful exercise of the curative powers of the doctor or surgeon to attempt to cure one who had been adjudged physically deficient, and that therefore such applicant had not been cured?

When the attention of the court rendering the judgment was called to the fact that, by a proper exercise of legislative power, the status of this territory had been changed, and that, because thereof, the right of respondents to the injunction had ceased,

such court, not having yet lost power over such judgment, should have vacated such portion thereof as gave injunctional relief, and allowed this corporation, which had been brought into existence by the curative act, to function. We might well apply to the facts of this case the words of Justice Daniel in his concurring opinion in Pennsylvania v. Bridge Co., supra, where, in upholding the action of Congress, he says:

"In what has been done by Congress, I can have no doubt that they have acted wisely, justly, and strictly within their constitutional competency. By their action they have completely overthrown every foundation upon which the decrees of this court, the orders of the circuit judge, and every motion purporting to be based upon these or either of them, could rest."

In the present case, the Legislature in no manner questioned the correctness of the judgment of the court. The effect of its action is as though the Legislature had said to the courts:

"You have called our attention, by your judgments, to a weakness of the law. We desired that independent districts might become parts of consolidated districts. It seems that we failed to so provide, and you have rightfully held that, as long as the present law remains, defendants should be restrained. We, however, have plenary power over school corporations, and desire that, wherever independent districts have attempted, with other districts, to organize consolidated districts, such acts shall be validated as of the date the abortive effort was made."

Be we ever so sensitive to legislative encroachment, we are not justified in saying that the Legislature has, in this case, encroached upon the powers of the judiciary. What the Legislature did was purely legislative in its nature. It did not overturn the judgment of any court, or question its correctness.

The case that is perhaps the most directly in point, and in which every possible phase of this case was passed upon, is that of Steele County v. Erskine, supra. Steele county was organized out of other counties. Thereafter its commissioners had the records of the original counties, affecting title to land in the new county, transcribed. Warrants were issued for the work. Action was brought on these warrants, and the Supreme Court of North Dakota held that the county commissioners had no authority to make the contract upon which they were based. The action was

therefore dismissed, at plaintiffs' costs. The next session of the Legislature passed a curative act, validating all contracts theretofore made of the nature of the one in question. Action was then brought in the United States District Court, and recovery had on the claim against the county. On appeal to the Circuit Court of Appeals, the judgment was affirmed; that court adopting in full the opinion of the District Judge, which opinion fully answers every question that has been or could be raised in opposition to the relief prayed for in this action. We will not quote at length from such opinon, but the following is so clearly in point as to demand setting forth herein:

"The former judgment between these parties simply declared the contract unenforceable because it was made without legislative authority. How can such a judgment be a bar to an action upon the same contract after it has received the legislative sanction? Judgments declare the rights of parties at the time they are pronounced, but do not preclude the assertion of rights subsequently acquired. In reply to an objection identical with that which we are now considering, the Supreme Court said: 'It surely cannot be seriously urged that the Legislature is stripped of its power to authorize a contract to have effect in the future by judicial interpretation of the contract, and which at the time had reference to the present and the past only. A very large proportion of the legislation in all the states is prompted by the decisions of the courts, and is intended to remedy some mischief pointed out or resulting from the utterances of the courts of the country.' City of New Orleans v. New Orleans Waterworks Co., 142 U. S. 79, 92, 12 Sup. Ct. 142, 35 L. ed. 943."

So we may say that this curative act now before us was prompted by this very action which was then pending, and was intended to remedy that very thing in the then existing law upon which plaintiffs in this action were depending—a remedy which it was clearly within the province of the Legislature to effectuate.

In Williams v. Shoudy, supra, a county issued some warrants which were invalid because certain requirements, essential to authorize their issuance, had not been complied with. An order of court was issued enjoining payment of the warrants. An election was thereafter held, at which the requisite vote to authorize

the issuance of such warrants was cast. It was held that this cured the original defect and that the injunctional order ceased to exist. The court, citing the Wheeling Bridge case as authority, said:

"The grounds upon and reasons for which it [the injunction] issued no longer existed after said warrants were validated, and by reason of the changed conditions it became ineffectual."

We have not overlooked the case of Wisconsin Tel. Co. v. Krueger, 115 Wis. 150, 90 N. W. 458. We deem the reasoning therein unsound and the conclusion wrong. Even though it was wrongful to have the telephone pole at the particular place prior to the new law, it could become rightful under the new law. However, the court in that case justify their decision solely on the ground that there had been a judgment between private parties establishing private rights, and note that the case is to be distinguished from one involving public rights, such as are involved in the case now before us.

Appellants, as soon as the curative act went into effect, might have disregarded the judgment of the circuit court and proceeded to act as officers of the consolidated district. Such official acts might have been valid and effective. As to this we advance no opinion. But the circuit court might have been of the view that, simply because the facts upon which it based its decree had changed, was not a sufficient cause to render its decree inoperative, and might have held that, until its injunctional orders were by it set aside, those disregarding same were punishable for contempt of court. Certainly, while the circuit court yet had jurisdiction over this cause, it cannot be claimed that appellants did not proceed in a proper manner—one disclosing due respect to the court rendering the judgment—when they asked such court, because of the change in controlling facts, to vacate the injunctional orders. This course was pursued in the Wheeling Bridge case, supra. See order at close of opinion.

Appellants are entitled to the relief sought and have sought same in the proper manner. The order appealed from is reversed, and the circuit court is directed to vacate the injunctional orders contained in its final judgment.