[No. 1816. Decided July 20, 1895.]

## F. A. WILLIAMS, *Respondent*, v. DEXTER SHOUDY, *Appellant*.

INJUNCTION — APPLICATION TO CHANGED CONDITIONS — COUNTY WARRANTS — VALIDATION BY SUBSEQUENT ELECTION — LEGALITY OF ELECTION — INTEREST ON VALIDATED WARRANTS.

The fact that a county treasurer had been enjoined from paying certain warrants for the reason that they had been issued in excess of the limit of indebtedness allowed by law, affords no ground for refusing to pay such warrants after the illegal indebtedness has been validated by the assent of three-fifths of the voters in an election held for that purpose.

Where it is sought to validate by popular election an illegal county indebtedness in excess of the limit allowed by law, it is sufficient under Laws 1893, p. 181, § 2, that the resolution of the board of commissioners providing for the election and the election notice specify the dates between which the several items of indebtedness were incurred, and it is unnecessary that such dates should be set forth in the ballots voted at such election.

The fact that an election notice specified that the polls would be kept open until six o'clock p. m., while the law and the resolution calling the election required they should be kept open till seven o'clock p. m., will not render the election illegal, when the polls were actually kept open the full time required by law, and there is no showing that the electors were prevented by reason of the mistake in the notice from giving a free and fair expression upon the question submitted.

Where county warrants have been issued for indebtedness illegally incurred, which has been ratified by subsequent vote of the electors in a special election for that purpose, the holders of the warrants are entitled to the legal rate of interest thereon from the date of their original presentation to the county treasurer for payment.

*Appeal from Superior Court, Kittitas County.*

*Wager & Graves*, for appellant.

*Alfred E. Buell* (*R. E. Moody*, and *Burke, Shepard & Woods*, of counsel), for respondent.

The opinion of the court was delivered by

GORDON, J.—The appellant is treasurer of Kittitas county, Washington. The respondent being the owner and holder of certain warrants of said county, aggregating the sum of $375, drawn on the general fund and issued for the current expenses of the county during the years 1890 and 1891, all of which had, prior to October 24, 1891, been presented for payment and indorsed, "not paid for want of funds," made an application in the lower court for a writ of mandate against the appellant, requiring him to pay said warrants, together with interest thereon at ten per cent. from the several dates of presentation and indorsement. His affidavit in support of said application, in addition to what has been already stated, sets forth that, at the time of the issuance of said warrants, the valid indebtedness of said county was equal to one and one-half per cent. of the taxable property therein, as shown by the last assessment for state and county purposes made previous to such assessment; that the indebtedness for which said warrants were issued was attempted to be incurred without the assent of three-fifths of the voters of said county voting at an election held for that purpose, but that otherwise said warrants would be valid claims against said county. The affidavit further sets out that the board of county commissioners of the county had passed a resolution, for the purpose of submitting to the voters of the county the question of the ratification of certain indebtedness attempted to be incurred by said county by issuing warrants on the general fund for the current running expenses, to the amount of $81,064.25, between the 24th of February, 1890, and the 8th of December, 1891, which resolution of the board is set out in full in said affidavit. Said affidavit further shows that

notice of the election was given as provided by law, and an election was duly had, whereat, by more than three-fifths of the votes cast, the attempted incurring of said indebtedness by said county, as aforesaid, was ratified; and that respondent's warrants were among the number validated at said election; that they thereby became valid claims against the county; that the same had been presented to the appellant, as treasurer, and payment thereof demanded; that, although appellant, at the time of such presentation and demand, had, and at all times has had, as treasurer, sufficient funds to pay the same, applicable to such payment, appellant neglects and refuses to cause the same to be paid. An alternative writ issued as prayed for. For a return, appellant admitted all of the allegations contained in the affidavit herein referred to, except that respondent's warrants were validated; and affirmatively set up as a reason for not paying said warrants: (1) That his predecessor had been enjoined at the suit of one S. T. Packwood, from paying certain warrants issued by said county, among which respondent's warrants were included; (2) that the warrants were invalid at the time of their issuance, and were not validated at said election for the reason that the dates between which the warrants sought to be validated were issued were not set forth in the *ballots* voted at said election; (3) that said warrants were not validated at said election, for the reason that the resolution of the board of commissioners providing for the election required that the polls should be kept open from 9 a. m. until 7 p. m., while the notice of election as published provided that the polls should be kept open from 9 a. m. until 6 p. m. (appellant admitted in his return, however, that the polls at said election were actually kept open until 7 p. m.); (4) that,

even if respondent is entitled to have said warrants paid, he is entitled only to the face of the warrants, and not to interest thereon at the rate of ten per cent. per annum from the several dates of presentation until paid. The court below sustained respondent's demurrer to said return, and, appellant refusing to plead further, the writ was made peremptory; and from said order and judgment this appeal is taken.

Proceeding to examine the questions involved, in the order in which they are raised in the return, we will first consider the effect of the order enjoining appellant's predecessor from paying these warrants. It is incorporated in full in the return, and appears to have been granted for the reason that the indebtedness for which the warrants were issued had been attempted to be incurred at a time when the debt of the county had reached the one and one-half per cent. limit, and without the assent of three-fifths of the voters, as provided by law. But we think that the effect of the election subsequently held, as set forth in the affidavit, and admitted by appellant, rendered the injunction inoperative. The grounds upon, and reasons for, which it issued no longer existed after said warrants were validated, and by reason of the changed conditions it became ineffectual. *State v. Wheeling & B. Bridge Co.,* 18 How. 421; *Mowrer v. State,* 107 Ind. 539 (8 N. E. 561).

As to the second proposition involved, viz., that the warrants were not validated at said election, for the reason that the dates between which the warrants sought to be validated were issued were not set forth in the ballots voted at said election, it appears from the affidavits already referred to, upon which the writ is based, that both the resolutions of the board of commissioners providing for the election and the election notice specified the dates between which the several

items of indebtedness were attempted to be incurred.
It also appears that there was only one class of indebt-
ness to be ratified, viz., "current expenses of the
county," between said specified dates.   This, we think,
constituted a compliance with the requirements of § 2
of the act of March 9, 1893 (Laws, p. 181), under
which the election was held, and it was not necessary
that the ballots should contain the dates between which
the debt was incurred.   It is the resolution and notice
provided for by the act which furnish the information
to the voter, and we think the form of the ballot sub-
mitted at said election was legally sufficient.

Third — Does the election fail because the resolution
calling the election specified that the hours during
which the polls should be kept open should be between
9 a. m. and 7 p. m., while the notice of election as
published specified from 9 a. m. to 6 p. m.?   We think
not.  This question received the consideration of this
court in *State, ex rel. Bailey v. Smith*, 4 Wash. 661 (30
Pac. 1064), in which it was said:

"In such cases there must appear some substantial
reason why courts should interfere to overthrow an
election, in the absence of any allegation of fraud, to
the effect that, had there been a larger number of
votes cast, the result would have been different.

Upon this point, the present case is much stronger
than the one just referred to, in this: that here it is
conceded that the polls were actually kept open until 7
o'clock, as prescribed by the resolution; and there is no
contention that the result was in any wise affected, or
that any voter was misled by the discrepancy between
the notice and the resolution.   The case of *Seymour v.
Tacoma*, 6 Wash. 427 (33 Pac. 1059), presents a ques-
tion very similar in principle to the one that we are
now considering.   In that case, the ordinance under

which the election was held required the clerk to pub-
lish the election notice in the official newspaper of the
city for *thirty days* next preceding such election, and
to post the same for the like period at all of the places
designated as voting places.    It appeared that the no-
tices were posted only *twenty-six days* next preceding
the day of election, and the court said:

" Certain rules as to notice of elections have become
well settled, and none of them are better settled than
that the formalties of giving notice, although pre-
scribed by statute, are *directory* merely, unless there
is a declaration that unless the formalties are observed
the election shall be void."

In note 3, § 197, of Dillon on Municipal Corpora-
tions, the learned author says:

"It is a canon of election law that an election is not
to be set aside for a mere informality or irregularity
which cannot be said in any manner to have affected
the result of the election."

It is very clear, in this case, that the mistake of the
clerk in the preparation of the election notice did not
operate in any way to prevent a free and fair expres-
sion of the voters of Kittitas county upon the ques-
tion submitted at said election, and constituted, at the
most, merely an irregularity not affecting the result;
hence, immaterial.

Fourth—Did the election ratify only the principal
or face of the warrants, and not the interest?    The
contention of the respondent is that the ratification in
this case should be construed the same as the court
would construe ratification by any principal of the
unauthorized act of his agent.

" It is, therefore, the general rule that one may
ratify the previous unauthorized doing by another, in
his behalf, of any act which he might then and could
still lawfully do himself."    Mechem, Agency, § 112.

The indebtedness submitted for ratification in this case was all evidenced by warrants of the county upon its general fund. Such warrants, when legally issued, bear ten per cent. interest from the date of their presentation for payment until payment is made. *Union Savings Bank & Trust Co. v. Gelbach*, 8 Wash. 497 (36 Pac. 467). We think the legal effect of the vote validating these warrants is the same as if precedent authority to issue them had been expressly conferred by the voters. The right of the holder of a warrant legally issued to interest (after proper presentment and indorsement made) is as fixed and certain in law as the right to demand payment of the principal, and the effect of the ratification extended to both principal and interest — it went to the whole act and validated the entire contract theretofore unauthorized.

" The ratification operates upon the act ratified precisely as though authority to do the act had been previously given." *Cook v. Tullis*, 18 Wall. 332.

In the present case, the voters of Kittitas county knew that the attempted indebtedness submitted for their ratification or rejection was evidenced by warrants, and that these warrants, by legal implication, bore interest; and, in contemplation of law, we think the effect of their vote entitled the respondent, as a holder of some of the warrants thus validated, to the same interest which he would be entitled to demand and receive if said warrants had in the first instance been legally issued, and does not restrict his right to receive interest only from the date of ratification.

The judgment appealed from will be affirmed.

HOYT, C. J., and ANDERS and DUNBAR, JJ., concur.