[No. 19885.   Department Two.   April 7, 1926.]

THE STATE OF WASHINGTON, *on the Relation of C. W. Doyle, Plaintiff*, v THE SUPERIOR COURT FOR KING COUNTY, *James B. Kinne, Judge, et al., Defendants.*[1]

[1] ELECTIONS (40, 47)—VOTING MACHINES—DISCREPANCY IN RETURNS—POWERS AND PROCEEDINGS OF CANVASSERS. A complaint to restrain the opening of voting machines is not demurrable on the theory that it shows a "discrepancy" within Rem. Comp. Stat. § 5315, authorizing such action, where it merely shows the failure of precinct officers to always record the total number of votes in each precinct in both words and figures, and in the failure to always record the total in ink, and that figures had been erased and new figures substituted; "discrepancy" meaning "disagreement, variance, discordance, contrariety," which does not appear.

Certiorari to review an order of the superior court for King county, Kinne, J., entered March 15, 1926, dismissing an action to restrain the opening of voting machines, upon sustaining a demurrer to the complaint. Granted.

[1]Reported in 244 Pac. 702.

*Hugh M. Caldwell,* for relator.
*Ewing D. Colvin,* for respondent.

ASKREN, J.—On March 9, 1926, a city election was held in Seattle. Various officers were elected, and there was also submitted to the voters the following propositions: (1) Whether fifteen freeholders should be elected to revise the charter; and (2) whether or not Seattle should adopt a city manager plan.

Voting machines were used in the election. At the close of the election, the regularly appointed precinct officers canvassed the vote in their precincts and entered the same in their returns, and forwarded them to the election board, which, under Rem. Comp Stat., § 5147, as amended by Session Laws of 1923, ch. 53, p. 173, § 3, is composed of the chairman of the board of county commissioners, the county auditor, and the prosecuting attorney, in Class A counties. King county is a Class A county.

Thereupon the election board canvassed the result of the election on all matters excepting the proposition for a city manager plan. This it refused to canvass upon the returns made by the precinct officers, because it had, in the meantime, received two letters from parties interested in the result of the election on that proposition, intimating that the vote was very close and requesting that investigation be made of the voting machines to determine if there were any discrepancies. The board thereupon announced that it would open the voting machines to determine the correctness of the returns made by the precinct officers. An action was then commenced in the superior court by one of the candidates for freeholder to restrain the board from opening the voting machines.

A complaint in intervention was also filed by the intervener herein. The complaints set forth sub-

stantially the facts heretofore detailed, and the answer
filed by the defendants set forth that there were dis-
crepancies in the returns and poll books relating to the
vote on the city manager plan; that the defendants
made and checked and tabulated the poll books of the
various precincts of Seattle affecting the proposition,
and ascertained that, according to the recorded figures
on the proposition, it lost by a majority of 111 votes;
that by law the votes for and against such a proposi-
tion are required to be entered by the precinct officers
in numerals and in words; that examination of the
recounts showed that in some precincts the record of
the votes was entered in figures only; in some pre-
cincts entered in pencil only; in other precincts entered
with pencil and traced over with ink; in other pre-
cincts certain figures had been entered and had been
entirely erased and new figures substituted; in other
precincts figures had been entered and entirely erased
and new figures entered over the old; that in each case,
however, where the votes cast on this proposition were
entered in both figures and words the figures and words
tallied; that there were approximately 73,300 votes
cast on the proposition; that the question of the city
manager plan is one of great importance to the city
and to the citizens of Seattle, and that they believed
the vote on the proposition should be definitely and
positively established beyond any question of doubt;
that the voting machines contained an apartment which
can be opened, and which will disclose the total vote
cast upon the proposition without in any way inter-
fering with the voting mechanism; that the defendants
do not desire to do anything further than to open this
compartment to determine if the figures entered upon
the returns of the precinct officers tally with the total
votes received in the compartment. Upon hearing, the

superior court was of the opinion that a demurrer, filed at the same time as the answer, should be sustained and that the restraining order heretofore issued against the opening of the machines should be dissolved. Thereupon intervener applied to this court for a writ of certiorari.

Both parties have stipulated that the matter at issue is of prime importance, and no question is raised as to the right or authority of the proceeding as to its form nor as to the right of the intervener to prosecute the same.

But two questions are presented by the record: (1) Is there any showing of a discrepancy that will justify the board in question in opening the voting machines? (2) Is this the board empowered by law, if there be a discrepancy, to make such examination?

[1] It will be noted from the statement of the case that all the allegations of discrepancies go to the failure of the precinct officers to always record the total number of votes in each precinct in both words and figures; in the failure to always require the total in ink; the allegation that figures had been erased and new figures substituted for them.

The statute authorizing the opening of the voting machines is Rem. Comp. Stat., § 5315, which provides, in part:

". . . Whenever it shall appear that there is a discrepancy in the returns of any election district the county commissioners, council, board or other governing body shall summon the inspector and judges of election thereof, who shall in their presence make a record of the number or other designating mark on the seal, and the number on the protective counter, open the counter compartment, and, without unlocking said machine against voting, shall recanvass the vote cast therein."

The question naturally arises, What is a discrepancy?

Webster's Dictionary defines discrepancy as "disagreement, variance, discordance, contrariety." See, also, *Smith v. Board of Canvassers,* 92 Misc. Rep. 607, 156 N. Y. Supp. 837.

It is quite evident that there is no disagreement or discordance upon the returns made by the precinct officers. There is no claim that there is any difference between the number of persons who voted and the number of votes cast. Neither is it claimed that any total shown on any return is incorrect. It may be true that the statute requires the total to be made both in words and figures, and that the total should be made in ink; but such provisions are usually considered as directory, and there is no claim that any total shown only in words or only in figures would be different if it were shown in both; nor that any total recorded in pencil would be different if it were recorded in ink. Nor is there any claim that if the counter compartment were opened that it would show details different from those contained upon the returns. Nor is there any claim that the returns as made are actually incorrect.

It may be true that the returns show that figures have been erased and other figures substituted; but that does not indicate that the change so made was for any other reason than that the first figures entered were wrong. A discrepancy referred to by the statute would be something to indicate that an error or a mistake has been made; that the total as shown is not a true one. The sanctity of the ballot box, or of the voting machine is not to be invaded simply because a vote is close, and it is hoped that a re-check of the work performed by the precinct officers may possibly show a change or an error.

Counsel for respondents have cited as authority for the opening of these voting machines, *In re Smith,* 216 N. Y. 421, 110 N. E. 768, which was an application for the examination of certain voting machines. The facts stated were that in that election 447 votes were cast, of which 425 were cast for mayor. One of the candidates received 137 votes, another 281. On the official returns the candidate receiving 137 votes through a mistake in reading the machine was given 182 votes. The mistake was discovered after the machines had been locked and the official returns sealed. The precinct officers thought that they could lawfully make no change in their return; but they notified the commissioners of election. They also failed to certify the total number of votes. The county board of canvassers did not order a recanvass of the vote, because, as they claimed, no discrepancy appeared upon the return. It was held that the returns should be corrected. It was conceded that discrepancies existed. That case clearly is not applicable to the case at bar.

Counsel on both sides have found comfort in the case of *In re Barrett,* 209 App. Div. 217, 204 N. Y. Supp. 705. In that case the trial court denied the application for permission to examine the voting machines under the New York law. The court there held that the word "discrepancies" usually means "inconsistency, disagreement, variance." A discrepancy exists where different parts of the same instrument or different instruments are in conflict with one another. Among the many discrepancies alleged as basis for the order to open the voting machines, there was one that certain of the returns were written in pencil rather than in ink. Counsel for respondent insist that the court thereby held that this was a discrepancy. But the court nowhere in the decision refers to this failure as being a

discrepancy. While the court held that an examination might be made of the machines, it should be noted that some nine different grounds of discrepancy are urged, among which were that there were more blank ballots for the office in question than were actually cast; that the inspectors in one district made arbitrary additions to the vote of both of the candidates equal in number as to each candidate; that in certain districts the total number of votes cast for one office was not given; that the returns were not properly certified; that discrepancies existed in certain districts between the figures filed with the different boards and that the figures in certain returns were illegible.

From the foregoing, it clearly appears that there were actual discrepancies in the returns which could only be corrected by the opening of the voting machines. There is nothing in the instant case to indicate any discrepancy.

Courts long ago adopted the rule that elections cannot be held invalid, nor the returns impeached, for mere irregularities. The officials in charge are chosen by law, and their actions and their returns are *prima facie* correct, except upon a showing of fraud or mistake. Thus it was held in *Seymour v. Tacoma*, 6 Wash. 427, 33 Pac. 1059, that the failure to publish notice of election for the required time was a mere irregularity; in *Williams v. Shoudy*, 12 Wash. 362, 41 Pac. 169, that the election notice which specified the wrong hour for closing was an irregularity; in *Murphy v. Spokane*, 64 Wash. 681, 117 Pac. 476, that the failure to observe statutory requirements that the officers be selected in a certain manner, be present at all times, take an oath of office, or that the polls should be opened on time and kept open during the time required by law were merely directory provisions.

In view of our holding that there was no allegation of any facts showing any discrepancy in the returns of the precinct officers it is unnecessary to notice the other question raised as to whether the board in question was the proper board to recanvass the votes. The cause is remanded with instructions to overrule the demurrer and reinstate the restraining order.

Tolman, C. J., Mitchell, Parker, and Mackintosh, JJ., concur.