WILLIAM H. COMLEY, STATE'S ATTORNEY, EX REL. FREDERIC W. HARRISON vs. RALPH T. WILSON, MODERATOR.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 20th—decided December 24th, 1932.

*James C. Shannon,* with whom were *Henry E. Shannon* and *Henry E. Shannon, Jr.,* for the appellant (relator).

*Homer S. Cummings,* with whom were *Joseph J. Devine, James E. Murphy* and *Isadore L. Kotler,* and, on the brief, *John T. Cullinan,* for the appellee (respondent).

MALTBIE, C. J. The relator was the republican candidate for state senator from the twenty-first senatorial district at the election held in November, 1932. This district comprises the first, second, third, fourth and fifth election districts in the city of Bridgeport. In the election voting machines were used in Bridgeport. The relator brought this proceeding to compel the respondent, moderator in the first district, and therefore the presiding officer for the election in the city, to secure a recanvass of the vote in this senatorial district, under a provision of the chapter of the statutes dealing with the use of voting machines which reads as follows: "Whenever it shall appear that there is a discrepancy in the returns of any election district, the officials authorized to receive and canvass the same shall summon

the election officials thereof, and such election officials shall, in the presence of such authorized officials, make a record of the number on the seal and the number on the protective counter, if one is provided, open the counter compartment of such machine, and, without unlocking such machine against voting, recanvass the vote cast thereon. . . . If, upon such recanvass, it shall be found that the original canvass of the returns has been correctly made from the machine and that the discrepancy still remains unaccounted for, such officials, with the assistance of the mechanic, shall, in the presence of the election officials and the authorized representatives of the several political parties, unlock the voting and counting mechanism of such machine and proceed to thoroughly examine and test the machine to determine and reveal the true cause or causes, if any, of the discrepancy in the returns of such machine." General Statutes, § 736.

In the general election law are certain provisions applicable at all electors' meetings, whether the vote is by ballot or voting machine. In each town or city divided into voting districts, unless otherwise provided by law, the moderator of the first district is the presiding officer for the purpose of making returns to the secretary of the state, and the moderators of the other districts are assistant presiding officers "and shall make returns of their polls as required by law." General Statutes, § 601. Immediately after the polls are closed, the official checkers are required to deliver to the moderator a certificate showing the number of names on the registry list and the number checked as having voted. General Statutes, § 614. The presiding officer of each electors' meeting in any town not divided into voting districts, and the presiding officer of the first district in all towns divided into voting districts, unless otherwise provided by law, must make out a triplicate list of the

votes given in the town for the officers to be elected, two of which lists are to be mailed to the secretary of the state and the third delivered to the town clerk; General Statutes, § 625; and he must also, with the certificates he is required to send to the secretary, return to him a statement showing the number of ballots counted and returned to him by the checkers and counters. General Statutes, § 626. The chapter of the General Statutes dealing with the use of voting machines requires that as soon as the polls are closed, the moderator shall canvass the votes recorded for each candidate and announce the result in distinct tones, and that the checkers shall take down the votes as announced upon tally sheets. General Statutes, § 735. In this chapter it is also provided that the moderator shall make a return showing the total number of votes cast for each office, the number of votes for each candidate as shown upon his counter and the number cast for each person not regularly nominated, this return to be certified by the board of election officials; and that upon this return is to be printed two certificates, one to be signed by the election officials before the polls are open, designed to show that proper preparation has been made for taking and counting the vote, and the other, to be filled out after the polls are closed, showing that the machine has been locked against voting and sealed, the number of voters as shown on the public counter, the number on the seal, the number registered on the protective counter, if one is provided, and that the voting machine is closed and locked. General Statutes, § 727.

The relator claims that there appears in the return of votes cast in the twenty-first senatorial district such a discrepancy as requires a recanvass of the vote. He bases his claim upon three grounds. The first is that in the first election district, the machines recorded

1542 persons as having voted, while the number shown upon the check list as having voted is 1526; in the second district the machines recorded 2877 persons as having voted, while the number shown upon the check list as having voted is 2875; in the first precinct of the fifth district the machines recorded 3076 persons as having voted, while the number shown upon the check list as having voted is 3077; and in the second precinct of the fifth district the machines recorded 3382 persons as having voted, while the number shown upon the check list as having voted is 3376.

The first question which presents itself is as to the basis upon which must rest the determination as to the existence of a discrepancy requiring a recanvass. The statute we have quoted uses the words "discrepancy in the returns of any election district;" it places the duty of a recanvass upon the "officials authorized to receive and canvass the same;" and requires them, before proceeding, to summon "the election officials thereof," that is, of the district. It is not questioned in this proceeding that the presiding officer of the election for the city, the respondent, is the person who was authorized to receive and canvass the returns from the various districts, as an incident to his duty to declare and make return to the secretary of the state of the vote for the entire city. In that return he is required, as we have pointed out, to include the information contained in the certificate of the checkers as to the number who have been checked upon the registry list as having voted. That information is necessarily an integral part of the matter placed before him by the election officials of each district. To be sure, the statute characterizes it as a certificate, but so it does the report required in § 727 by the officials of an election district as to the number shown to have voted upon the public counter and the protective counter of a voting machine. We

see no distinction between the two certificates as regards the question before us, nor any substantial reason why, if signed as required by the statute, both may not be combined, as was done in this instance, in one certificate. The respondent does not question that the information included in the latter certificate may be used in determining whether there has been a discrepancy, and, if that is so, no valid reason exists which forbids the use of the information contained in the former. The legislature, in using the expression "discrepancy in the returns" could hardly have intended only a discrepancy apparent by comparison of the respective votes cast for the different offices or officers as they appear in the moderator's return, but must have intended that the figures giving the total number who have voted, as shown either upon the public or protective counter of a voting machine or by the checking of names upon the registry list, might be considered; for only in this way could there be any definite information indicating the failure of the machine to register votes for the candidates as a whole or for those of any one party. In determining whether there is a discrepancy, resort may properly be had to the figures upon both certificates.

As between the figures upon the two certificates there is, however, a distinct difference in significance as indicating a discrepancy. If the public or protective counters upon the voting machine should record a less number as having voted than the number of votes returned as cast for any candidate, it would indicate very clearly either an error in reading or returning the number of votes recorded for some or all of the candidates or a failure of the machine properly to operate in all its parts; and while the recording upon those counters of a few more persons as having voted than the number of votes recorded for the candidates for any office

might be susceptible of explanation upon the ground that some of the voters had not voted for all candidates, any great difference would cast serious doubt upon either the correctness of the canvass or the proper operation of the machine. In the case of the numbers shown upon the check list as having voted, the element of human error must enter very largely into the question whether there is a discrepancy, for in the hurry of a crowded voting period errors in the checking of names upon the registry lists are naturally to be expected. Consequently a difference between the number so checked, whether less or more, and the number recorded upon the machine as having voted would not necessarily point to an error in canvassing the vote or in the operation of the machine. Whether such a difference does show a discrepancy must depend upon degree and circumstance. In the first instance it is for the officials whose duty it is to receive and canvass the vote to determine the question. Their honest and reasonable exercise of their judgment cannot be controlled by the court through a writ of mandamus. "With the exercise of discretionary powers courts rarely and only for grave reasons interfere. These grave reasons are found only where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize the result. Difference in opinion or judgment is never a sufficient ground for interference." *Whitney* v. *New Haven,* 58 Conn. 450, 457, 20 Atl. 666; see also *State ex rel. Foote* v. *Bartholomew,* 103 Conn. 607, 615, 132 Atl. 30; *S. C.,* 108 Conn. 246, 249, 142 Atl. 800; *State* v. *Erickson,* 104 Conn. 542, 545, 133 Atl. 683. While it does not appear in the record why the respondent refused to recanvass the vote, it may well have been because he deemed the difference between the number of persons checked upon the registry lists

in the different districts and the number recorded upon the machines as having voted was, under the circumstances, insufficient to show a discrepancy in the returns. We cannot say that his refusal to make a recanvass indicates "improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law." The trial court was correct in not recognizing, as sufficient ground for it to order a recanvass, the difference between the numbers checked upon the registry lists and the numbers recorded upon the voting machines as having voted.

The second ground which the relator advances as a basis for the issuance of the peremptory writ of mandamus is that in the first precinct of the fifth district there appears upon the return of the votes cast for the democratic candidate for state senator in the district, the relator's opponent in the election, an erasure and substitution as regards the second digit in the number of votes stated as having been cast for him, 486. Such an erasure and substitution in themselves suggest as clearly, if not more clearly, an honest effort to correct a mistake in writing down the vote for the particular candidate as announced by the moderator, as it does any discrepancy in the return of the votes cast. The trial court proceeded to hear evidence as to the circumstances involved and has made a finding which is not challenged upon the appeal. This states that when the moderator was reading from the machine the record of votes cast for various candidates he stood in back of it and a police sergeant, two newspaper reporters and deputy registrars representing both the republican and democratic party stood beside him; that he read the number of votes cast for the democratic candidate for senator in that district as 486; that he was misunderstood and the two checkers stopped him; that he then read the number over again and one of the checkers

entered it upon the return as it now appears; and no evidence was offered that the number recorded upon the machine was other than that announced by the moderator and entered upon the return. If we regard these findings, they clearly establish that the erasure and substitution indicated no discrepancy in the return of votes cast. If we disregard them and compare the votes cast for state senator upon this machine with the vote cast for the candidates for other offices upon it, the difference is too slight to suggest anything but a splitting of tickets or a failure to vote for all candidates by some voters. And if we consider the erasure and substitution by themselves, the respondent might, in the exercise of an honest and reasonable judgment, have found that they did not indicate a discrepancy and, for the reasons we have stated, his exercise of judgment in the matter could not be controlled by the issuance of a peremptory writ of mandamus.

The third ground advanced as a basis for the issuance of the writ comes before us only upon a ruling upon evidence. The relator offered in evidence, but the trial court excluded, the certificate of the election officials of the fourth election district, which was so drawn as to call for a statement of the number of votes registered on the public counters of the machines and the number of names checked upon the registry list as having voted, but in which the spaces for this purpose were not filled out. The certificate showing the number of names checked upon the registry list, to be signed by the checker or checkers is, under the literal terms of the statute we have referred to, General Statutes, § 614, a distinct certificate from that required to be signed by election officials under the chapter concerning the use of voting machines, General Statutes, § 727; although, as we have said, we see no serious objection to combining the two. In this instance, the record does not

show that the checkers in this district did not sign and deliver to the moderator a separate certificate of the number of names checked upon the registry list; indeed, unless they did, it is difficult to see how the respondent could have made a proper return to the secretary of the state as required by § 626, to which we have referred. Moreover, § 614 requires that, in addition to the certificates to be delivered to the moderator by the checkers, the registrars of voters shall write upon the registry list, itself, and sign, a certificate containing the same information, and deposit it in the town clerk's office there to be preserved for public inspection. The mere fact, therefore, that the certificate offered in evidence failed to show the number of voters checked upon the registry list as having voted, would be insufficient as a basis for the court to reach a conclusion that there was a discrepancy in the returns; and the relator in no way suggested that he might offer other evidence in support of his claim. Indeed, the mere failure of that certificate to state the number, taken by itself, does not even show a breach of duty by the election officials. Nor could we accept the relator's contention that a failure of the election officials to certify the number of votes registered upon the public counters of the machines or names checked upon the registry list, would show a discrepancy in the returns. The failure of the election officials to make the certificates required of them would be a breach of duty on their part, but this breach of duty could not supply the figures necessary for that comparison upon which might be based a claim that there was a discrepancy in the returns. No error can be found in the ruling of the trial court in excluding the certificate from evidence. It necessarily follows that there was no error in the exclusion of the moderator's return showing the votes cast for the various candidates in

this district, offered to show that there was upon it nothing to meet the requirements of the statutes that there be a certificate of the number registered upon the public counters or checked upon the registry list as having voted.

The trial court has found that no claim was made by the relator that the vote for either candidate for state senator in the district was in fact erroneously recorded by the machine or erroneously recorded by the moderator or those acting under him, except as to the return that 486 votes were cast for the democratic candidate in the first precinct in the fifth district. The most the relator can claim is that the circumstances we have discussed indicate a possibility of error in recording or returning the vote. It is of the highest importance that there should be a speedy and definite determination of the votes cast at an electors' meeting. It is the duty of courts, when it is necessary to preserve the substantial rights of any person, not to hesitate to act in controversies growing out of elections; but they should act only upon a clear showing that otherwise serious injustice will be done. This case presents no such situation and upon the facts and well established principles of law the trial court was correct in denying the application of the relator for relief.

There is no error.

In this opinion the other judges concurred.