FRANCES BURKE REDICK ET AL. v. PAUL E. SCHUMACHER ET AL.

SUPERIOR COURT          HARTFORD COUNTY          FILE NO. 83471

Memorandum filed November 16, 1948.

*William L. Hadden,* Attorney General, of Hartford, for the Plaintiffs.

*William S. Gordon, Jr.,* of Hartford, *Harold M. Missal,* of Bristol, *Orson L. St. John,* of Greenwich, and *Edmund J. Eshenfelder,* of New London, for the Defendants.

INGLIS, J. This is a motion to dissolve a temporary injunction issued ex parte by the undersigned on November 5, 1948. That temporary injunction restrained the defendants, who are the town clerks in towns of this state where voting machines are used, from opening the machines used in the recent state election, even after the expiration of the ten-day period provided by statute, until otherwise ordered, "except and unless the Plaintiffs . . . see fit to examine said voting machines, or any of them, under the provisions of Section 736 of the General Statutes . . . in accordance with the procedure therein provided, and for that purpose only."

It should be pointed out, parenthetically, that it is not the intention nor intendment of the temporary injunction to direct the defendants to open the machines for inspection by the plaintiffs. So far as the temporary injunction is concerned the question whether the defendants should so open the machines is left to the defendants themselves to decide. The injunction itself goes no further than to restrain the defendants from opening the machines for any other purpose.

The cause of action stated in the complaint rests upon the claimed right in the plaintiffs, as incidental to their alleged duty, to receive, canvass and count the votes cast at the recent election for the candidates for the state offices, to inspect said voting machines under certain circumstances. One of their prayers for relief is for such relief as to equity may appertain. The basic question which will have to be decided ultimately in the case is therefore whether the plaintiffs have such a right and, if so, whether the court should in equity direct the defendants to open the machines for inspection by the plaintiffs if such direction should become necessary.

Although that is the question which must ultimately be decided, it is not the question to be decided on this motion. The only question now to be decided is merely whether there is enough color to the claim of right of the plaintiffs so that the present situation should be maintained in statu quo until such time as the actual rights of the plaintiffs are determined by the court. If the voting machines were to be opened after the expiration of the ten-day period fixed by the statute and the votes recorded thereon obliterated, it is obvious that any right which the plaintiffs have to inspect them for the purposes of a canvass of the vote would be nullified. Whether the plaintiffs have such a right cannot be determined at this time. That question can be determined only by the court which hears the case, and that sub-

ject to the right of appeal to the Supreme Court of Errors. Under the well-established principles of equity, therefore, if it appears that the plaintiffs have a reasonable color of right in the premises, the status quo should be maintained until the existence or non-existence of that right can be determined by the proper tribunal in the regular course. Accordingly, the present inquiry is directed solely to the question whether there is color of right in the plaintiffs to inspect the voting machines. Whether there is such color of right in the plaintiffs turns upon the proper interpretation of § 736 of the General Statutes. That section, after providing that voting machines shall be kept locked for a period of ten days after any election, reads, in part: "Whenever it shall appear that there is a discrepancy in the returns of any election district, the officials authorized to receive and canvass the same shall summon the election officials thereof, and such election officials shall, in the presence of such authorized officials . . . open the counter compartment of such machine, and, without unlocking such machine against voting, recanvass the vote cast thereon." The question is whether the phrase "the officials authorized to receive and canvass the same" is to be interpreted as referring to or including the plaintiffs.

In order to determine whether that statute does at least colorably vest in the plaintiffs the power to open the voting machines, the considerations tending against such a construction must first be examined.

Looking at the statute itself, it is apparent that it is contemplated that the opening of the machines herein authorized is to take place within ten days after the election. The plaintiffs as canvassers of the vote may not, under the law, receive the returns from the presiding officers in the towns until after that time and, in any event, are not required to complete their canvass until the expiration of thirty days. It would appear therefore that the legislature could not have expected *them* to decide within ten days that a machine ought to be opened.

It may also be suggested that the statute provides for a recanvass if there is a discrepancy in the returns of "any election district." Under the law the plaintiffs as canvassers receive only the returns by towns. The returns from the voting districts of each town are combined by the presiding officer of that town and only the combined returns sent to the secretary of state. The state board of canvassers do not have before them the returns from any voting district. It would not be they, therefore, who would be likely to discover a discrepancy in the returns

from any voting district; and for that reason it might be con-cluded that it was not they to whom the statute referred as "the officials authorized to receive and canvass" the returns from any voting district. Cf. *State ex rel. Harrison* v. *Wilson,* 116 Conn. 36.

Perhaps the most cogent argument against the plaintiffs' con-tention appears when the statute in question is read in the light of the provisions of the state constitution. The duties of the plaintiffs with reference to canvassing votes for state offices are defined in article IV, § 2 of the constitution, relating to the elec-tion of governor, and other sections and amendments relating to other offices which incorporate the provisions of that article by reference. That section first provides that the presiding officers at electors' meetings in the various towns shall transmit to the secretary lists of the persons voted for and of the number of votes given for each. It then reads as follows: "The votes *so returned* shall be counted by the Treasurer, Secretary and Con-troller. . . . A fair list of the persons and number of votes given for each, together with the returns of the presiding officers, shall be, by the Treasurer, Secretary and Controller, made and laid before the General Assembly. . . ." (Italics added.)

It is contended by the defendants that under these provisions it is the duty of the plaintiffs to canvass only the returns made by the various presiding officers. That is, their only function is to compile from those returns the total number of votes cast for each state officer and report that to the General Assembly. If a discrepancy appears in the return sent in by any presiding officer it may be their duty to inquire of that officer to straighten out the discrepancy but they have no duty nor right to go behind the returns to the ballots or votes recorded on the machines themselves.

That this contention of the defendants is forceful appears not only from the fact that the constitution says they shall count, not the votes, but the votes returned. Also, it is hardly to be presum-ed that the framers of the constitution would make the treasurer, secretary and controller judges of what might well be their own election to the extent of vesting in them the quasi-judicial func-tion of determining what valid votes had actually been cast for or against them.

Tending toward the same conclusion is the fact that the legis-lature has apparently construed the constitution as limiting the power of the treasurer, secretary and controller to a canvass of

the returns and not of the original votes in that it has provided that the votes for senators, judges of probate and sheriffs "as returned" (General Statutes, § 632), the votes to fill vacancies in the office of judge of probate "so returned" (§ 639), and "the votes returned as cast" for members of congress (§ 657) shall be canvassed by the same board.

In the light of the foregoing and some other considerations, it must be recognized that there is at least substantial doubt that the plaintiffs are the persons referred to in § 736 as "the officials authorized to receive and canvass "the returns from the various election districts in the respective towns and therefore are the proper persons to demand an opening of the voting machines under that section.

On the other hand, there are some considerations which tend to the conclusion that the intent of § 736 is to include the plain-tiffs as such officials. To outline them briefly they are as follows:

If in the section in question the phrase "the officials authorized to receive and canvass the same" does not intend to refer so far as state elections are concerned to the treasurer, secretary and comptroller, the question naturally arises as to whom it does refer. The answer of the defendants here is that it refers to the presiding officers of the election in the respective towns. As regards that contention, there cannot be much doubt that the phrase is broad enough to include such presiding officers, because it is their duty to receive and canvass the vote of each election district. *State ex rel. Harrison* v. *Wilson*, 116 Conn. 36. It is not clear, however, that it refers to them exclusively.

In the statute the term "officials" is in the plural. With respect to the returns from any given election district, even in towns where there are more than one election district, there is only one presiding officer. So when the statute says "officials" it would appear that the legislature referred to, or at least in-cluded in the term, some officials other than the one presiding officer.

Moreover, it is to be noted that the phrase "the officials au-thorized to receive and canvass" the vote is practically identical with the phrase used in § 654: ". . . the persons authorized to receive and count the same." The only difference is that § 736 uses the word "officials" instead of the word "persons" and the word "count" instead of the word "canvass." This difference is inconsequential. The point of this comparison is that § 654 relates to the canvass of votes for state offices. It provides that the votes for state offices shall be canvassed "by

the persons authorized to receive and count the same" within thirty days. There can be no doubt that the phrase "the persons authorized to receive and count the same," as that phrase is used in § 654, means the treasurer, secretary and comptroller. If the phrase means that as it is used in § 654, it is logical to conclude that the legislature intended it to mean the same in § 736.

On the whole case, therefore, although it must be recognized that there may be some substantial doubt as to whether the plaintiffs under § 736 are officials who are entitled to require the opening of the voting machines, that conclusion is far from certain. There is certainly substantial ground to conclude that the section may be interpreted when this case is finally tried so as to give to these plaintiffs the right to open the machines. With so much color of right in them, equity should intervene by temporary injunction to keep matters in statu quo until this question can be finally determined.

It is clear that to dissolve the temporary injunction at this time might cause great harm to the plaintiffs in that it would put an end to any opportunity to recanvass the votes recorded on the machines. To continue the injunction, on the other hand, does nothing more than to prevent the machines from being opened and the evidence of how the vote really stood from being destroyed. This can do no harm to the defendants nor to anyone else. It will not delay the final determination of the results of the election by the plaintiffs because in any event they must under the law reach that final determination within the thirty days next after the election.

It is well established that, unless it is plain that a plaintiff is without legal right, when it comes to the question whether a temporary injunction is to be issued or continued the court should take into consideration the relative harm that its issuance or continuance will do to the respective parties. *Olcott* v. *Pendleton,* 128 Conn. 292. In the present case it is not clear that the plaintiffs have no legal right. It is clear that more harm will be done to them by the dissolving of the temporary injunction than would be done to the defendants by its continuance. It is therefore concluded that the temporary injunction should be continued.

The motion to dissolve the temporary injunction is denied.