[No. 76399-2.   En Banc.]
Argued December 22, 2004.   Decided December 22, 2004.

THE WASHINGTON STATE REPUBLICAN PARTY ET AL.,
*Respondents*, v. KING COUNTY DIVISION OF
RECORDS, ELECTIONS AND LICENSING
SERVICES ET AL., *Petitioners*.

CHAMBERS, J., concurs by separate opinion; SANDERS, BRIDGE, and
FAIRHURST, JJ., did not participate in the disposition of this case.

*Norm Maleng, Prosecuting Attorney*, and *Janine E. Joly*
and *Thomas W. Kuffel, Deputies*, for petitioners King
County Division of Records, Elections and Licensing Ser-
vices and King County Canvassing Board.

*David J. Burman, Beth A. Colgan, Rebecca S. Engrav, Kevin J. Hamilton, William C. Rava, Breena M. Roos*, and *Charles C. Sipos* (of *Perkins Coie, L.L.P.*), for petitioner Washington State Democratic Central Committee.

*Thomas F. Ahearne* (of *Foster Pepper & Shefelman, P.L.L.C.*), for petitioner Sam Reed, as Secretary of State.

*Harry J.F. Korell III* and *Robert J. Maguire* (of *Davis Wright Tremaine, L.L.P.*), for respondents Jane Milhans and Christopher Vance.

*Diane E. Tebelius*, for respondent Washington State Republican Party.

*Andrew C. Cook, Timothy D. Ford*, and *Timothy M. Harris* on behalf of Building Industry Association of Washington and Ken Eikenberry, amici curiae.

¶1 ALEXANDER, C.J. — During the hand recount in the 2004 Washington State election for governor, the King County (County) Canvassing Board discovered that some 573 ballots had been coded by election workers as having "no signature on file" after the workers found no signatures of the voters casting those ballots in the County's electronic elections database. But the workers had failed to check for signatures elsewhere, such as the voters' original registration forms, the archive of images from the County's old electronic registration system, and the registration records maintained by the secretary of state. At its December 15, 2004, meeting, the canvassing board decided to recanvass these ballots pursuant to RCW 29A.60.210 to determine whether the failure to count the ballots in the governor's race was erroneous. The next day, the Washington State Republican Party, Christopher Vance, and Jane Milhans filed in Pierce County Superior Court this action for de-

claratory and injunctive relief against the canvassing board and the King County Division of Records, Elections and Licensing Services, and sought a temporary restraining order prohibiting recanvassing of the 573 ballots. On December 17, 2004, after a hearing on the request for a restraining order, the Pierce County Superior Court issued the requested order. The court concluded that "RCW 29A.60.210 does not apply in this context."

¶2 Now, the Washington State Democratic Central Committee, an intervenor below, seeks direct review of the superior court's order, arguing that the King County Canvassing Board properly concluded that RCW 29A.60.210 permits recanvassing of the 573 ballots.[1] The canvassing board joins in that request, as does the secretary of state, who is the chief elections officer of the State and who also intervened below. We grant review and reverse the superior court.

¶3 This hand recount of ballots came before the court very recently in a case involving whether a recount necessarily involves a recanvassing of previously-rejected ballots. In our decision in that case, issued December 14, 2004, we held that under Washington's recount statute, "ballots are to be 'retabulated' only if they have been previously counted or tallied, *subject to the provisions of RCW 29A.60.210.*" (Emphasis added.) The quoted language, referencing the "recanvassing" statute, RCW 29A.60.210, acknowledges that under proper circumstances a canvassing board may decide that ballots should be recanvassed before certification of a recount. Indeed, the Secretary of State's Director of Elections, Nick Handy, has provided this court with a detailed declaration explaining how other counties have already employed RCW 29A.60.210 to count votes

---

[1] The Washington State Democratic Central Committee initiated this review by filing a notice of appeal directed to this court, a statement of grounds for direct review, and a motion for accelerated review. Because the superior court's decision is not a final judgment or other decision subject to appeal under RAP 2.2(a), we redesignate the Democratic Central Committee's notice as a notice for discretionary review. RAP 5.1(c). Thus, the superior court's decision is subject to review under the criteria of RAP 2.3(b).

from ballots not counted in the original returns for this election. Our prior opinion did not hold that the recanvassing statute may not be employed by canvassing boards during a recount.[2]

¶4 The question here is thus whether RCW 29A.60.210 authorized the King County Canvassing Board to recanvass the 573 ballots in question. RCW 29A.60.210 provides in part:

> Whenever the canvassing board finds that there is an apparent discrepancy or an inconsistency in the returns of a primary or election, the board may recanvass the ballots or voting devices in any precincts of the county.

Since this statute permits recanvassing, the statutory definition of "canvassing" is also pertinent. RCW 29A.04.013 provides:

> "Canvassing" means the process of examining ballots or groups of ballots, subtotals, and cumulative totals in order to determine the official returns of a primary or general election and includes the tabulation of any votes that were not tabulated at the precinct or in a counting center on the day of the primary or election.

And although our election statutes do not define "returns," RCW 29A.60.120(3) provides that the "official returns" are "[t]he returns produced by the vote tallying system, to which have been added the counts of questioned ballots, write-in votes, and absentee votes."

¶5 As noted, the King County Canvassing Board says that these 573 ballots were previously coded by election employees as having "no signature on file." The board has now concluded that this designation may have been in error, since election workers failed to check the signatures

---

[2] While RCW 29A.60.210 requires recanvassing prior to certification of an election, and RCW 29A.60.190 speaks of certification occurring on the fifteenth day following a general election, it is clear to us that whenever a recount occurs, amended abstracts are certified that supersede any prior abstract of the results. RCW 29A.64.061. The statute does not define "certification," but the regulations promulgated by the secretary of state make clear that certification involves the preparation and transmission of abstracts of votes to the secretary of state. *See* WAC 434-262-010, -020, and -080.

against voter records on file, as required by RCW 29A.40.110(3) and King County rules for this election. The board has therefore decided to recanvass the ballots and correct any such errors that it finds. Respondents suggest that there may have been some impropriety involved in this decision, or that the ballots involved might have been tampered with, but point to no facts supporting such a conclusion.[3] The question becomes whether the type of error thus identified amounts to "an apparent discrepancy or an inconsistency in the returns" of the election, as contemplated in RCW 29A.60.210.

¶6 This court has issued but one opinion construing the recanvassing statute. *See State ex rel. Doyle v. Superior Court of King County*, 138 Wash. 488, 244 P. 702 (1926). The version of the statute then in effect permitted the opening of voting machines to recanvass the vote "whenever it shall appear that there is a discrepancy in the returns of any election district . . . ." In *Doyle* all votes tallied, but some returns were not made in both words and figures and in ink, as required by statute.

¶7 Given these facts, this court found it "quite evident that there is no disagreement or discordance upon the returns made by the precinct officers." Informed by a dictionary definition of the word "discrepancy," it concluded that "[a] discrepancy referred to by the statute would be something to indicate that an error or a mistake has been made; that the total as shown is not a true one." *Doyle*, 138 Wash. at 492. By way of example of such discrepancies, the court said that

> [t]here is no claim that there is any difference between the number of persons who voted and the number of votes cast. Neither is it claimed that any total shown on any return is incorrect. . . . Nor is there any claim that if the counter compartment were opened it would show details different from

---

[3] The King County Canvassing Board has stated that these ballots should be kept separate and secure, and we agree that this shall occur.

those contained upon the returns. Nor is there any claim that the returns as made are actually incorrect.

*Id.*

¶8 Here, by contrast, the canvassing board has concluded that the returns as made may indeed be "actually incorrect." The board also says that further examination of the ballots under question may well show details "different from those contained upon the returns." When election workers found no matching signatures for these ballots in the county's electronic voter files, the ballots were apparently set aside to check for signatures elsewhere, including original paper registration forms. But this was never done. Instead, the ballots were described to the canvassing board and not counted in the returns as votes.

¶9 Respondents would have us narrowly construe "an apparent discrepancy or an inconsistency in the returns" to mean only an arithmetic error disclosed on the face of the returns. But this is contrary to *Doyle*, which speaks in terms of "incorrect" returns and returns at odds with other evidence. Moreover, since the statute permits recanvassing, it is instructive to remember that canvassing involves "examining ballots or groups of ballots, subtotals, and cumulative totals in order to determine the official returns," RCW 29A.04.013. Here, certain ballots were coded as having "no signature on file" without having been fully examined to properly place them in that category. In that sense they were never fully canvassed, and the seeming error in placing them in any category has become evident to the King County Canvassing Board. Under *Doyle* this is just the sort of apparent discrepancy or inconsistency that the board can correct through recanvassing.[4]

---

[4] Our decision accords with the only analogous out-of-state authority cited to us, *Comley ex rel. Harrison v. Wilson*, 116 Conn. 36, 163 A. 465 (1932). The court there held that in using the phrase "discrepancy in the returns" the legislature "could hardly have intended only a discrepancy apparent by comparison of the respective votes cast for the different offices or officers as they appear in the moderator's return." *Id.*, at 42. Rather, the legislature must have intended reference to the figures giving the total number who have voted, "for only in this way could there

¶10 It thus follows that the superior court erred in granting a temporary restraining order, and that the King County Canvassing Board properly concluded that it had authority to recanvass the subject ballots pursuant to RCW 29A.60.210. Based on the law as declared in this opinion, respondents are not entitled to injunctive relief. Therefore, the superior court's "Temporary Restraining Order and Order to Show Cause" is reversed and vacated, and the cause is remanded to the superior court for entry of an order of dismissal forthwith.

JOHNSON, MADSEN, IRELAND, and OWENS, JJ., and BRIDGEWATER, J. PRO TEM., concur.

¶11 CHAMBERS, J. (concurring) — I concur fully in the judgment and reasoning of the court. I write separately to express my view on a broader subject. I have observed a recent trend of political interest groups seeking judicial intervention before matters are placed on the ballot, before the people vote, and before election officials have fulfilled their duties to canvass and count the votes. *See Maleng v. King County Corr. Guild*, 150 Wn.2d 325, 76 P.3d 727 (2003) (preelection challenge to initiative); *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 911 P.2d 389 (1996) (same); *McDonald v. Reed*, 153 Wn.2d 201, 103 P.3d 722 (2004); *cf. Sane Transit v. Sound Transit*, 151 Wn.2d 60, 104-06, 85 P.3d 346 (2004) (Chambers, J., dissenting). This trend perhaps was exacerbated by *Bush v. Gore*, 531 U.S. 98, 121 S. Ct. 525, 148 L. Ed. 2d 388 (2000).

¶12 In my view, there is little to commend judicial intervention into the electoral process before the process is complete. First, the necessary procedures of judicial decision making do not lend themselves to instant resolution of electoral issues. Our procedures are based upon a deliberative and adversarial process. Proper judicial decision making requires notice and an opportunity for interested parties to be meaningfully heard. At the trial level, we engage

---

be any definite information indicating the failure of the machine to register votes for the candidates as a whole or for those of any one party." *Id.*

in discovery, evidentiary hearings, and make findings of fact and conclusions of law. At the appellate level, we must be thoughtful and deliberate both to ensure a just and correct result in the instant case and because our decisions set precedents for the future.

¶13 Judges should never shy from their constitutional duties. Any election or ballot measure, including resolutions, initiatives, referendums, or the election of officials, which violates constitutional, federal, or state laws may, in due course, be declared void and unenforceable by the judicial branch. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is."); *see also Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 191-92, 11 P.3d 762, 27 P.3d 608 (2000) (striking unconstitutional initiative). But courts, in my view, should be reluctant to issue temporary restraining orders or grant emergency review of election matters *before* election officials have had sufficient opportunity to fulfill their duties. Because we play a part in a government of separated powers, we are not a council of revision, routinely advising the other branches as to the constitutionality of proposed laws. James T. Barry III, Comment, *The Council of Revision and the Limits of Judicial Power*, 56 U. Chi. L. Rev. 235 (1989) A trip to the courthouse should not become a customary election routine.

¶14 We have, however, in barely more than a week heard two cases involving Washington's 2004 gubernatorial election. While it may be perceived that one case was resolved in favor of those representing the Republican party, *McDonald v. Reed*, 153 Wn.2d 201, 103 P.3d 722 (2004), and one resolved in favor of those representing the Democratic party, the two decisions are consistent and well grounded in sound principles of separation of powers and good government. In each case this court has declined to issue writs to election officials instructing them how to fulfill their duties. I fully support this court's action in the 2004 gubernatorial election, but in the future, courts should resist requests

that we oversee the election process. This takes us to the second reason why courts should be wary of entering these disputes: to maintain proper separation of powers.

¶15 The legislature should make the law, the courts should interpret the law, and the executive should execute the law. The legislature has empowered county election officers and canvassing boards to administer elections. For courts to micromanage election officers is to inappropriately blur the executive and judicial functions of government.

¶16 Our legislature has established a comprehensive body of laws, detailing how elections should be conducted. So long as those laws are constitutional, the courts are obliged to enforce those laws. There is a certain amount of subjectivity inherent in the legislatively established process of comparing signatures and counting absentee and provisional ballots. *See* RCW 29A.60.210. The legislature, probably in recognition of this inherent subjectivity, has given local county election officials the authority and the discretion to recanvass ballots or voting devices until the last day to certify the election. RCW 29A.60.210. Should election officials fail to carry out their duties within the law, there are procedures for challenging the results. *See* ch. 29A.68 RCW (contesting elections). This temporary restraining order should not have been granted by the trial court. I concur.